[Civ. No. 20556. Third Dist. Mar. 19, 1985.]

PLACER COUNTY WATER AGENCY,
Plaintiff, Cross-defendant and Appellant, v.
FRANK L. HOFMAN et al.,
Defendants, Cross-complainants and Respondents.

COUNSEL

Frederick G. Girard, Robin Leslie Stewart and Kronick, Moskovitz, Tiedemann & Girard for Plaintiff, Cross-defendant and Appellant.

Thomas W. Martin and Franklin A. Dill for Defendants, Cross-complainants and Respondents.

OPINION

BLEASE, J.—Placer County Water Agency exercised the power of eminent domain to acquire easements necessary for the construction, maintenance, and use of water pipelines traversing respondents' (Hofmans) land. In the condemnation action the jury verdict awarded the Hofmans substantial sums for expenses incurred to mitigate damages and for severance damages to the remainder of the Hofmans' property. The court awarded the Hofmans litigation expenses. (Code Civ. Proc., § 1235.140.)[1] It denied the agency's request to offset the value of the Hofmans' use of the property against the interest otherwise due on the compensation awarded in the proceeding. We will affirm the judgment except for the award of mitigation damages.

*Facts*

The agency decided to construct a pipeline to convey water from its water treatment plant to the City of Lincoln. The route traversed the 4,993-acre parcel of land owned by the Hofmans. It filed this action in May 1977 to acquire a permanent 25-foot-wide easement across the parcel for use as a corridor for the buried pipeline and future pipelines as needed. The agency also sought a temporary easement encompassing an additional 15 feet on each side of the permanent easement zone for use in constructing the pipeline.

Construction commenced pursuant to an order for possession prior to judgment. (See § 1255.010 et seq.) During the construction of the pipeline the Hofmans developed suspicions that the contractor was not building the pipeline according to project specifications. The pipe is buried in a trench. In order to protect the pipe from fractures, the project plans require that the backfill medium in which the pipe is embedded be compacted as specified, not contain large rocks and be of specified depth. The Hofmans paid engineers to investigate and evaluate the suspected deviations from the project

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

specifications. They also paid lawyers to bring a separate action to compel the agency to comply with the environmental mitigation measures contained in the project's environmental impact report (EIR) and to remedy defects they perceived in the pipeline construction. The EIR proposed, as mitigation measures, that the ground disrupted by the trenching activities be reseeded with native flora and that rocks unearthed in the trenching work be removed from the project easements. The Hofmans contended this had not been accomplished with the likely result of safety hazards and erosion damage to their remaining land. This litigation resulted in a stipulated judgment, filed October 3, 1978, which, as approved by the court, provided that the agency must "comply with the provisions of the [EIR]." The part of the proposed judgment providing that the construction work comply with good engineering and construction practices and enable the Hofmans to use the land without impairment was stricken by the court.

After the pipeline was completed it was tested and spot repairs were made. The agency then decided to reconstruct portions of the pipeline. It replaced a significant segment of the line and reworked the layer of bedding material on top of the pipe. The work was completed by December 10, 1979, and the temporary easement ended.

Prior to trial the agency learned that the Hofmans planned to cross over the pipeline with a large piece of earthmoving equipment, a J621, to construct a cattle feedlot area. The J621 when loaded has a "wheel load" exceeding 25,000 pounds. The agency estimated that the reconstructed pipeline would bear the stress of any vehicle "wheel load" up to 25,000 pounds but that any higher weight posed an unacceptable risk of injury to the pipeline. It filed a supplemental complaint enlarging the burden of the permanent easement to prohibit, without the consent of the agency, the crossing of the pipeline by vehicles with a "wheel load" heavier than 25,000 pounds.

The valuation trial was based upon the project as actually constructed. The major issue was the amount of damages to the remainder of the Hofmans' property caused by the easements. (See § 1263.410 et seq.) The Hofmans presented two primary witnesses concerning these severance damages. Carlin Hofman, one of the owners, testified that the temporary easement for the construction of the pipeline substantially prevented use of the property for cattle and sheep ranching because of the intrusions of construction workers and the actual and potential disruption of access to the area of the property suitable for feedlot purposes. He calculated the damage inflicted on the market value of the property attributable to this interference was the rental value of comparable facilities, an aggregate figure of $109,049.

Carlin Hofman calculated the total reduction in the fair market value of the property attributable to the combination of the temporary and permanent

easements as $384,700. He cited various reasons for the damage caused by the permanent easement, e.g., loss of isolation as a result of pipeline repair and maintenance harming beef production; loss of guaranteed carrying capacity of the ranch in light of possible future pipeline construction; fears that the pipeline might be unsafe; loss of ability to use very heavy vehicle equipment because of the "wheel load" limitation; and difficulties in irrigating across the permanent easement. Hofman's testimony was buttressed by Joseph Murphy, a real estate appraiser specializing in rural property. He affirmed in substance Hofman's method of calculating the loss attributable to the temporary easement and estimated the total severance damages at $322,000.

The agency's valuation witnesses contended that there were no severance damages. In their view the construction activities had little or no effect on ranching and the presence of the water pipeline would have no negative effect on the fair market value of the property. They testified that the value of the property was enhanced considerably by the potential for future development as a result of the treated water available from the pipeline.

The engineering testimony was also in sharp conflict. Merle Henry, a registered civil engineer with a background in design of waterline and sewerline systems testified for the Hofmans. In his opinion, despite the absence of any break of the line for six months, the reconstruction activities were insufficient to prevent an unacceptable risk of breaks for the portions of the pipeline where only the top fill had been reworked. He believed over time crossing the pipeline with ordinary vehicles may cause the pipeline to break in these areas. The agency witnesses testified that the pipeline as constructed would safely withstand all normal traffic.

The jury awarded damages in sum of $166,625: for the taking of the easements, $8,200; compensation for expenses incurred to mitigate damages, $62,425; compensation for severance damages to the remainder, $111,000; offset for special benefits $15,000. The court awarded litigation expenses of $157,717.81.

*Discussion*

I

The agency contends that the award of expenses to mitigate damages is erroneous as a matter of law. Expenses were for engineering and legal services largely incurred in a separate legal action which sought to compel the agency to comply with the project plans and EIR. The engineers investigated and evaluated the original pipeline construction in response to the

Hofmans' concerns that the contractor deviated from the project plans as reviewed in the EIR. ■ ■ ■ ■ The agency argues that mitigation expenses are limited to the costs of the construction of tangible physical solutions to harms engendered by public projects and should not be extended beyond that context.[2] The agency has misjudged its ground of opposition. Their argument does not speak to the policy concerns of the condemnation law. (Cf. *People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263, 271-272 [203 Cal.Rptr. 772, 681 P.2d 1340].) ■ Rather the dispositive point is that the *statutory* rule which governs the award of mitigation expenses applies only where there is a duty to mitigate damages *caused by* the injurious action. It does not apply to the preventing or modification of the taking itself.

It is the damages *caused by* the *taking* which is the subject of a condemnation action. That is what the governing statute says. It provides that the condemnee may recover any "damage . . . *caused to* the remainder *by* . . . (a) [t]he severance [or *by*] . . . (b) [t]he construction and use of the project for which the property is *taken* in the manner proposed by the plaintiff . . . ." (§ 1263.420; italics added.)

The rule for mitigation of damages is part of the measure of damages caused by the taking. The rule stems from *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129]. It says that the measure of just compensation for damage is the "actual physical injury to real property proximately *caused by the improvement* as deliberately designed and constructed" by the condemning agency. (*Id.*, at pp. 263-264; italics added.) In *Albers* landowners sought severance damages resulting from landslides caused by the construction of a county road. As part of those damages the plaintiffs sought to recover expenditures they made to prevent or minimize further damage that might be caused by the construc-

---

[2]The agency also peripherally attacks the motivations of the Hofmans in incurring these expenses. It claims they were motivated by a vindictive and meddlesome disposition, not a genuine concern for lessening damages otherwise compensable in the condemnation proceeding. Though not framed as such this is in effect a claim that no substantial evidence supports the trial court's finding (preliminary to permitting the question to go to the jury) that the funds were expended in a good faith attempt to mitigate their damages. The implicit substantial evidence claim may be summarily dismissed on the ground of failure to point out the evidence in support of the finding. (See, e.g., *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) Moreover, the correspondence of the parties during the original construction, in which the Hofmans raised the claim that the work was being done improperly resulting in unnecessary damage to their property, permits the inference drawn by the trial court and we will not disturb its finding. The same correspondence specifically raises the vehicle-crossing-impairment problem. The agency responses permit the inference it ignored the initial claims until they were borne out by its own investigations. There was no love lost between the parties from the outset.

tion. The court held that "the duty to mitigate damages [applies to] eminent domain cases . . . ." (*Id.*, at p. 273.) The court viewed mitigation as one measure of the damages caused by the taking. It postulated that "if such efforts had been successful the amount of damage inflicted by the slide 'would have been substantially less' than that which ultimately occurred." (*Id.*, at p. 272.) That, said the court, brought the costs of mitigation within the measure of recompense for damages caused by a condemnation project. It assumed that "the fair market value of the property taken or damaged will be *decreased* by the amount which the owners reasonably and in good faith spend in discharging [the] duty" to mitigate damages. (*Id.*, at p. 273; original italics.)

The mitigation rule applied to condemnation cases is rooted in legal principles of general application. As *Albers* says: " ' "The rule is of general and widespread application that one who has *been injured* either in his person or his property by the wrongful act or default of another is under an obligatory duty to make a reasonable effort to minimize the damages liable to result from such injury, and that if he does not make such reasonable effort he will be debarred from recovering for those additional damages which result from such failure . . ." [citation] and that "it is held as a natural corollary to this rule of duty . . . that the injured party . . . will be allowed to recover the expenses necessarily incurred in so doing . . . ." ' " (*Albers, supra,* 62 Cal.2d at p. 271, italics added; see also 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 870, p. 3158.)

If there is no taking, it is not possible for there to be any damages *caused by* a taking. If a putative condemnee is successful in (say) averting a taking altogether by legal action, he has certainly prevented the damage that otherwise might have accrued but he has not mitigated any damages *caused by* a taking. Similarly, if a condemnee has *partially* averted a taking by modifying the nature of the action resulting in the taking, he may thereby have reduced the damages to his property but he has not mitigated them. That is what is claimed here. The Hofmans sought to compel adherence of the project construction to the project plans through a lawsuit to compel the agency to comply with the project EIR. It is true that such an action may forestall damages that might otherwise accrue from the unplanned construction of the project and thereby serve to reduce the damages. But that action was aimed at altering the taking, not mitigating the damages caused by the taking. The expenses thus incurred by the Hofmans may not be recovered in the condemnation action.

We would not necessarily reach this result if we were writing on a clean slate. On policy grounds one might persuasively argue that such a recovery

should be permitted, at least to the extent that the landowner diminishes the amount otherwise owing as condemnation damages by compelling the public agency to act lawfully. However by reason of statute and precedent we are not at liberty to adopt such a rule.

## II

The agency next contends that the award of litigation expenses is erroneous as a matter of law. Litigation expenses may be awarded only upon a finding that the condemnee made a reasonable final pretrial demand for compensation. (See § 1250.410.) The Hofmans' final demand was for $200,000 but contains the proviso that it "is based and conditioned upon representations of [the agency] that the project as built will safely support all weights below or less than those specified in the First Amended Supplemental Complaint . . . ." The agency argues this proviso rendered the demand inherently unreasonable as the ability of the pipeline "as built" to support lighter vehicles was the major damage issue in the case. It submits that the Hofmans' demand was an offer of a pigless poke. It also challenges as unsupported by the evidence a related finding of fact; that "[t]he jury's award of damages . . . does not include damages . . . arising out of the future crossing of the permanent easement with vehicles [of a lesser weight than specified in the complaint] . . . ."

Section 1250.410 provides for litigation expenses if the final demand for compensation "was reasonable viewed in light of the evidence admitted and the compensation awarded in the proceeding . . . ." (§ 1250.410, subd. (b).) "The purpose of [this statute] . . . is well established. '[It] was intended to promote settlement of valuation disputes in eminent domain proceedings and guarantee full recompense to the land owners in case of unnecessary litigation.'" (*Los Angeles County Flood Control Dist.* v. *Mindlin* (1980) 106 Cal.App.3d 698, 714 [165 Cal.Rptr. 233], citing from *County of Los Angeles* v. *Kranz* (1977) 65 Cal.App.3d 656, 660 [135 Cal.Rptr. 473].)

The agency cites *Mindlin, supra,* 106 Cal.App.3d 698, for the proposition that, as a matter of law, a conditional offer is not a reasonable final demand within the meaning of section 1250.410. In *Mindlin* the public entity's final offer was conditioned on the right to appeal the judgment as rulings made by the trial court prior to the valuation trial. If it was successful the entire award including the valuation component would have been undone. In dicta,

the *Mindlin* court suggested this condition disqualified the offer for purposes of section 1250.410. It reasoned: "An offer made subject to the condition of reserving the right to appeal does not indicate any intention or willingness to finally resolve the dispute; on the contrary, it bespeaks of determination to seek vindication at a later time of the offeror's position during negotiations." (*Id.*, 106 Cal.App.3d at p. 719.)

The agency argues this case is analogous to *Mindlin*. In its view the Hofman offer was an attempt to prize off the key issue in the case for future litigation while asking an unreasonable sum for compromising the remainder. We disagree. In *Mindlin* the condition challenged was the reservation of a right to challenge the entire judgment; here the offer was to except a portion of the potential recovery from the ambit of the judgment. The attempted analogy stems from a confusion concerning the nature of the valuation issues at the impending trial and the effect of the compromise on those issues.

The structural strength of the pipeline was likely to be one issue in the valuation trial. An evidentiary showing of its durability was necessary to assess the magnitude of the damage done to the remainder of the Hofmans' land by depressing its fair market value. This effect corresponds to a continuum of probability of pipeline ruptures (with concomitant interference with ranching activities). The continuum can be divided into three parts: (1) the probability is so remote that buyers would discount it entirely; (2) the probability is small but sufficient to induce anxiety leading to a measurable influence on the purchase price; and (3) the probability is such that the market price would be fully discounted for the inevitable disruptions attendant to the predictable harm or the cost of amelioration of those disruptions.

The first state of affairs obtained in *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480]. In that case the trier of fact found no effect on the market value of residences due to airport noise, despite an extensive showing that the noise might have deleterious effects on residents. (*Id.*, at pp. 925-927.) The second situation is demonstrated by *City of Salinas* v. *Homer* (1980) 106 Cal.App.3d 307 [165 Cal.Rptr. 65] upholding present compensation for a cloud on a title where the city took title in fee simple to a strip of land for a utility line project and suggesting this did not preclude a future damage action if the possibly more onerous uses causing the cloud became actual. (See also Annot., Fear of Powerline, Gas or Oil Pipeline, or Related Structure as Element of Damages in Easement Condemnation Proceeding (1983) 23 A.L.R.4th 631.) The third variety of case is exemplified by *Ellena* v. *State* (1977) 69 Cal.App.3d 245 [138 Cal.Rptr. 110]. In *Ellena* the owner of a vineyard was denied compensation

for damage to his land from a freeway drainage system on the ground that the damage was a reasonably foreseeable harm of the freeway project at the time the condemnation action was settled and it was presumed the settlement included all harm reasonably foreseeable at that time. The owner was chargeable with knowledge of the drainage system plan and the obvious probability of this particular harm. (*Id.*, at pp. 255-257.)[3]

Here, the severance damage if the pipeline were incapable of withstanding normal traffic inferably would be substantially greater than if it would withstand such traffic. The best test of such durability is the test of time. The owner in a condemnation action who foresees the possibility of future harm from the project is placed in a difficult situation. If he does not fully litigate the compensability of the effect of the potential harm in the condemnation action he may waive a valid claim to compensation. This could induce the pursuit of speculative claims based on future harm to avoid a foreclosure of recovery. This may lead to recovery for harms which may never occur, to the fiscal detriment of public entities. ■ The most sensible resolution in cases where there is substantial dispute in the evidence of the probability of such contingent future harm is to defer it for future resolution. A prudent public agency would be well-advised to accept a stipulation to exempt from a direct condemnation action the question of compensation attributable to such future harm. Accordingly, we hold that in such a situation a final demand for compensation is not rendered unreasonable per se by a reservation of such an issue.

In this case there is a substantial dispute in the evidence concerning the likelihood that ordinary vehicles may cross the pipeline for protracted periods without damaging it. The degree of economic harm to the ranching enterprise from such damage is inherently difficult to predict. Assuming that the Hofmans' offer was not otherwise unreasonable in amount, it is not made unreasonable by the contingent offer to prize off damages attributable to future harm that might occur if the pipeline is materially defective. Indeed, in light of the agency's protestation of the strength of the pipeline, such an offer could be viewed as merely asking that it put its money where its mouth is.

III.

That leaves the question whether the Hofmans' offer is unreasonable if the question of future harm is deferred. The agency contends that the trial

---

[3]Also cf. *Pacific Gas etc. Co.* v. *W. H. Hunt Estate Co.* (1957) 49 Cal.2d 565 [319 P.2d 1044] in which the costs of mitigation measures for potential irrigation systems to avert a possible electrocution hazard were deemed a relevant factor in estimating severance damages caused by a powerline easement.

court was in error in finding that the verdict did not include compensation for future harm caused by vehicles which were not precluded by the permanent easement from crossing the pipeline. The agency contends that the offer was unreasonable because, stripped of the damages attributable to the prospect of future harm, the measure of compensation was the value assigned by the jury for the easements alone, $8,200. The argument incorrectly equates the severance damages attributable to the alleged substandard construction of the pipeline with all severance damages. We conclude that the challenged finding was warranted and thus cannot find that the offer of compromise was unreasonable as a matter of law.

The agency argues there is no substantial evidence to support the finding. However, the agency offers no recitation of the evidence. It submits that the "principal" item of severance damage was damage attributable to the perception that the pipeline would not withstand normal traffic. However, the agency offers no discussion of evidence concerning the amount of severance damages even if the pipeline were as structurally sound as it contends. This failure alone warrants rejection of the claim that there is no substantial evidence to support the finding of the trial court. (See *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 152 [135 Cal.Rptr. 802].) The finding must be upheld if it can reasonably be inferred from the record that the jury viewed damages attributable to fears concerning crossings by normal vehicle traffic as speculative and conjectural. (Cf. *Ellena, supra,* 69 Cal.App.3d at p. 256.)[4] Such an inference may be drawn. The jury was properly instructed to disregard uncertain, remote, speculative or imaginary items of depreciation of the market value of the Hofmans' remainder. The evidence of the structural strength of the pipeline was diametrically opposed. The severance damages awarded in the verdict were $111,000. The jury was not asked by special verdict to reveal its method of calculation.[5] The amount awarded can be reconciled with the rejection of any depression of the market price based upon a perception that the pipeline could not withstand normal traffic. Alternatively, the jury may have concluded the pipeline will not withstand

---

[4]*Ellena, supra,* presents a different posture for the same issue. In *Ellena* the trial court found that compensation for future damages had been awarded in prior proceedings. When it concluded the actual damage was reasonably foreseeable it necessarily rejected the claim that the damages were speculative and conjectural. (69 Cal.App.3d at p. 256.) This conclusion was within the exclusive province of the trial court because the evidence of reasonable foreseeability was conflicting and the trial court has an institutionally superior vantage point for resolution of factual conflicts. (*Ibid.*)

[5]The better practice for all concerned would have been to submit a more detailed special verdict form apportioning the severance between temporary and permanent easements. A finding on the degree of harm to the remainder if the pipeline was reasonably certain to break down under ordinary vehicle use as a preliminary to the severance damage award for the permanent easement would have been quite helpful.

permitted vehicle traffic but discounted such harm at an amount far below that estimated by the Hofmans. The trial court was better situated than we to divine which of these explanations was the more likely.

■ Given that the trial court was permitted to find that the award did not include compensation for that which the Hofmans' offer to compromise would have excluded, we are constrained to uphold the finding that the Hofmans' offer was reasonable. "The measure of reasonableness is in the first instance a factual matter for the trial court." (See *County of Los Angeles* v. *Kranz, supra,* 65 Cal.App.3d at p. 659.) There is no legal ground tendered upon which we can disturb the factual determination of the trial court. (See generally Condemnation Practice in Cal. (Cont.Ed.Bar Supp. 1982) § 10.23A, pp. 131-134.)

## IV

Finally, the agency contends that the trial court erred in failing to offset the rental value of the Hofmans' actual possession of the property against the prejudgment interest otherwise owing on the condemnation award. The agency argues that the statute providing for offset, section 1268.330, compels the finding that no interest was due since it contains an evidentiary presumption that the value of the possession of the property is equal to the interest otherwise due.[6]

■ The agency contends that the prejudgment interest is barred by section 1268.330.[7] It claims the Hofmans were not deprived of the possession of their property because they were entitled to use the easement for all purposes not in conflict with the construction activities. The value of such a possession, says the agency, must be offset from the interest under section 1268.330. Not so. Section 1268.330 does not apply to the taking of an easement for the reason that it would then apply to and preclude interest for

---

[6]Another issue is presented by the inclusion with the Hofmans' reply brief of numerous exhibits consisting of matters not contained in the record on appeal. In addition they have lodged with this court additional reporter's transcripts of proceedings in another action between the parties. They include in the midst of their reply brief the assertion that these matters were judicially noticed below by implication and that we are therefore obliged by Evidence Code section 459 to take similar notice. We will not. This attempt to invoke our power of judicial notice wholly fails to comply with the requirements of California Rules of Court, rule 41.

[7]The text of the statute is: "If, after the date that interest begins to accrue, the defendant: [¶] (a) Continues in actual possession of the property, the value of such possession shall be offset against the interest. For the purpose of this section, the value of possession of the property shall be presumed to be the legal rate of interest on the compensation awarded. This presumption is one affecting the burden of proof. [¶] (b) Receives rents or other income from the property attributable to the period after interest begins to accrue, the net amount of such rents and other income shall be offset against the interest."

the very deprivation of a property interest which is the subject of the condemnation award.

In a condemnation action it is the value of the property taken which is the subject of the action and the purpose of prejudgment interest is to provide recompense for any deprivation of use of the property *taken* prior to the judgment. The compensation award in a fee simple taking is the value taken. The value is fixed as of the date the agency moves to take possession of the property and interest accrues as of the date of the taking. (§ 1263.110 et seq. and § 1268.310.) Prejudgment interest recompenses the landowner for the period between the taking and the payment for the taking. The same reasoning applies to the taking of an easement. The purpose of prejudgment interest is to recompense the landowner for the period from the taking of the easement to the payment for the easement. That purpose cannot be finessed by defining "actual possession" in section 1268.330 to include the very deprivation of a property interest, to wit; the easement, which it is the purpose of the law to recompense.

In section 1268.330, "the property" means that which is taken. The property right which is taken in an easement case is the right to use the land in the manner described and to bar the owner and all others from inconsistent uses. (See 5 Rest., Property, §§ 451-452.) Once taken, that property right is no longer possessed by the owner, regardless of continued possession of other property rights in the same land. Accordingly, under the proper construction of the statute the Hofmans did not continue in possession of "the property" and were not liable for an interest offset.

The judgment is reversed as to the award of damages for mitigation. In all other respects the judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.