[No. S141148. July 23, 2007.]

METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA,
Plaintiff and Respondent, v.
CAMPUS CRUSADE FOR CHRIST, INC., et al., Defendants and
Appellants.

**COUNSEL**

Redwine & Sherill, Justin M. McCarthy, Scott R. Heil; Berger & Norton, Michael M. Berger, Gideon Kanner, John T. Fogarty; Matteoni, Saxe & O'Laughlin, Matteoni, O'Laughlin & Hechtman, Norman E. Matteoni, Peggy M. O'Laughlin and Gerry Houlihan for Defendants and Appellants.

Jenny, Jenny & Jenny and Scott E. Jenny as Amici Curiae on behalf of Defendants and Appellants.

Sullivan, Workman & Dee, Roger M. Sullivan and Gary A. Kovacic as Amici Curiae on behalf of Defendants and Appellants.

Palmieri, Tyler, Wiener, Wilhelm & Waldron and Patrick A. Hennessey as Amici Curiae on behalf of Defendants and Appellants.

Law Offices of Peter D. Lepiscopo, Peter D. Lepiscopo and James M. Griffiths for Pacific Justice Institute as Amicus Curiae on behalf of Defendants and Appellants.

James S. Burling for Pacific Legal Foundation as Amicus Curiae on behalf of Defendants and Appellants.

Jeffrey Kightlinger, Henry S. Barbosa, Lauren R. Brainard, Karen Tachiki, Sydney B. Bennion, Joseph A. Vanderhorst; Cox, Castle & Nicholson, Kenneth B. Bley and Edward C. Dygert for Plaintiff and Respondent.

Janet Morningstar for Municipal Water District of Orange County as Amicus Curiae on behalf of Plaintiff and Respondent.

Myers, Widders, Gibson, Jones & Schneider and Katherine E. Stone for League of California Cities, California State Association of Counties and Association of California Water Agencies as Amici Curiae on behalf of Plaintiff and Respondent.

Ferguson, Case, Orr, Paterson & Cunningham, Douglas E. Kulper and Sandra M. Robertson for Calleguas Municipal Water District as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—The Metropolitan Water District of Southern California (MWD), a public agency founded in 1928, supplies water to six Southern California counties. In 1997, MWD brought an eminent domain action to condemn a portion of land in San Bernardino County owned by Campus Crusade for Christ, Inc., and Del Rosa Mutual Water Company (collectively, Campus Crusade) to construct a segment of a 43-mile water pipeline to channel water from the inland areas to the coastal plains of Southern California. Prior to trial on the issue of just compensation, MWD persuaded the trial court to exclude valuation evidence offered by Campus Crusade's experts to the extent such valuation was based on the property's potential use as a planned residential development and resort area, which differed from its current use and which was not permitted under the zoning in effect at the time of the taking. The trial court also granted MWD's request to exclude evidence of severance damages to the fair market value of the remainder of Campus Crusade's property (i.e., the property not taken) to the extent the damages were based on fear that the pipeline (which crosses the San Andreas Fault on Campus Crusade's property) could rupture in an earthquake and to the extent the damages were based on certain other aspects of the pipeline and its construction process. Finally, the trial court excluded evidence of temporary severance damages to the extent the damages were based on the adverse impact of the seven-year construction period on Campus Crusade's ability to finance and market the property.

Based on these rulings, Campus Crusade waived its right to a jury trial. The trial court fixed just compensation at $478,278.45, none of which was attributable to severance damages. Campus Crusade appealed, and the Court of Appeal reversed and remanded for a new trial, finding (1) that Judge John P. Wade, who had replaced Judge Cynthia Ludvigsen following her reassignment, had overstepped his authority in reconsidering and overruling her prior evidentiary rulings; (2) that a property owner does not bear the burden of proof on the amount of compensation or on any preliminary facts that may affect the jury's determination of just compensation; (3) that the trial court had erred in preventing Campus Crusade from offering evidence that the property's highest and best use was as a future planned residential and resort development, notwithstanding evidence of a reasonable probability the property could be rezoned in the near future, and had erred as well in taking that issue away from the trier of fact; and (4) that the trial court had erred in excluding evidence of severance damages arising from fear of a pipeline rupture and in excluding evidence of temporary severance damages arising from the adverse effects of construction on Campus Crusade's ability to market and finance the property.

We granted review to clarify the respective roles of the trial court and the jury at a compensation trial in an eminent domain action and the nature of the damages that a property owner may recover. For the reasons outlined below, we affirm in part and reverse in part the judgment of the Court of Appeal and remand for further proceedings.

BACKGROUND[1]

Campus Crusade, a charitable religious corporation, owns 1,824 acres of land situated partly within the northern edge of the City of San Bernardino and partly in unincorporated county territory within the city's sphere of influence and slated for annexation. Although most of the property is undeveloped, it is the site of the historic Arrowhead Springs Hotel, the International School of Theology, several office buildings, a conference center, a sports field, and a village. The property is also the primary source for Arrowhead Mountain Spring Water.

In early 1996, Campus Crusade retained a land developer to assist with its plans to create a planned residential development on the property and to restore the existing resort and other buildings. The city seemed to be enthusiastic and supportive of Campus Crusade's plans for future development. But Campus Crusade's plans were disrupted when MWD decided to construct a portion of the Inland Feeder project, a 43-mile water pipeline from Devil Canyon to Diamond Valley Lake, across the property. Now built, the pipeline is 12 feet in diameter, constructed of welded steel, and buried hundreds of feet underground along most of its route. However, the pipeline enters covered trenches along the Campus Crusade property that are only 10 to 12 feet deep and, in some places, the pipeline is as close as four feet to the surface. The pipeline is designed to be close to the surface in these areas in order to facilitate repair in case of a rupture and to function as a "safety valve" in the event of an earthquake. The pipeline crosses the San Andreas Fault at this location.

MWD's board of directors adopted their resolution of necessity on December 10, 1996. The resolution provided that MWD was to acquire the land at issue "for the purpose of constructing, reconstructing, maintaining, operating, enlarging, removing, and replacing a line or lines of pipe at any time, and from time to time, for water transportation, with every appendage or structure necessary or convenient to be installed at any time in connection therewith."

---

[1] Because no party petitioned for rehearing to challenge the Court of Appeal's recital of the factual and procedural history, we take our statement of facts largely from that opinion. (Cal. Rules of Court, rule 8.500(c)(2).)

On December 23, 1996, MWD deposited funds into the State Treasury, thereby setting the date of valuation. The following month, MWD filed its complaint in eminent domain and an ex parte application for possession. The first amended complaint sought 10.4 acres in fee, 18.7 acres of permanent easements, 27.4 acres of temporary construction easements for a period of seven years, and two permanent tunnel easements, one below ground and the other above ground.

Campus Crusade submitted statements of valuation from three appraisers: E. R. Metcalfe, James Smothers, and Robert Swing. The appraisers estimated the value of the property interests being taken at between $1.5 million and $1.6 million, and the temporary and permanent damage to the remainder at between $12.6 million and $14 million. The pipeline cut across Campus Crusade's property at a location that was most valuable and most amenable to development. One of the permanent easements ran up against some of the existing buildings, and the resolution provided that Campus Crusade was not to interfere unreasonably with MWD's rights over the permanent easements. Further, the resolution restricted Campus Crusade's ability to modify the topography, construct buildings, or plant trees in the areas covered by the easements.

The taking also interfered with Campus Crusade's secondary access rights to the property by way of 40th Street, San Bernardino, over a neighboring parcel. In addition, Campus Crusade contended that the pipeline, which crossed a branch of the San Andreas Fault at the site where the pipeline was raised to within several feet of the earth's surface, posed a risk of rupture. A breach in the pipeline could cause a sudden outflow of millions of gallons of water onto Campus Crusade's property at a rate of 1,000 cubic feet per second. MWD analyzed this risk as a significant environmental impact in its environmental impact report.

Finally, the temporary construction easements encompassed a row of mature trees that served as a natural entryway for the historic hotel. MWD's use of these easements required the cutting of all the mature vegetation in the area. MWD disclaimed any obligation to restore the vegetation to its prior condition.

MWD submitted a revised statement of valuation of $392,000 as just compensation for all the property taken, with no amount allocated for severance or temporary severance damages. On October 7, 1999, MWD filed

a final offer of compensation for $1.5 million plus costs and interest, but subsequently increased its offer to $3.5 million. Campus Crusade revised its demand to $12.5 million for the property taken and severance damages.

Prior to trial, MWD filed several motions in limine to exclude evidence. Judge Cynthia Ludvigsen denied most of the motions and allowed Campus Crusade to present evidence to support its claim of severance damages, including damages caused by fear of a pipeline rupture. Judge Ludvigsen also allowed Campus Crusade to present evidence of construction-related damages if those damages were excessive and beyond the ordinary annoyances associated with a public works project.

After Judge Ludvigsen was reassigned and replaced by Judge John P. Wade, MWD filed additional motions in limine: requests to exclude evidence of temporary and permanent severance damages, including evidence of damages caused by the seven-year period that would be needed to complete construction of the pipeline; a request to exclude valuation evidence to the extent it was based on uses not permitted by current zoning; a request to exclude evidence concerning impairment of Campus Crusade's access to the property via 40th Street; and a request to exclude evidence concerning the fear of a pipeline rupture. Judge Wade granted each of these motions, effectively precluding Campus Crusade from presenting evidence of severance damages, on the grounds that such damages were not recoverable as a matter of law, were too speculative, or assumed circumstances that did not exist on the date of valuation.

Based on Judge Wade's rulings, Campus Crusade reduced its demand for compensation to $5,380,000. Because Judge Wade's rulings effectively limited its recovery to compensation for the actual taking only, Campus Crusade also waived its right to a jury. On June 12, 2003, Judge Wade awarded Campus Crusade $478,278.45, which did not include any amount for severance damages.

The Court of Appeal reversed and remanded the matter for a new trial. The appellate court held that Campus Crusade had presented sufficient evidence of severance damages to warrant consideration of such damages by the trier of fact, that Campus Crusade had presented sufficient evidence of a likelihood that the property would be rezoned for residential and hotel development to permit the trier of fact to consider such potential uses in determining the property's fair market value, and that the trier of fact should have been permitted to consider the effect of the seven-year-long construction on Campus Crusade's ability to plan, finance, and market the property.

We granted MWD's petition for review.

DISCUSSION

This case arises under article I, section 19 of the California Constitution, which requires the owner whose property is taken or damaged for a public use be paid "just compensation, ascertained by a jury unless waived."

The Legislature has defined the measure of just compensation as "the fair market value of the property taken." (Code Civ. Proc., § 1263.310.)[2] "The fair market value of the property taken is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available." (§ 1263.320, subd. (a).) "As section 1263.320 indicates, the fair market value of property taken has not been limited to the value of the property as used at the time of the taking, but has long taken into account the 'highest and most profitable use to which the property might be put in the reasonably near future, to the extent that the probability of such a prospective use affects the market value.' " (*City of San Diego v. Neumann* (1993) 6 Cal.4th 738, 744 [25 Cal.Rptr.2d 480, 863 P.2d 725].) This prospective use "is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." (*Olson v. United States* (1934) 292 U.S. 246, 255 [78 L.Ed. 1236, 54 S.Ct. 704].)

When the property taken is part of a larger parcel, the owner is compensated not merely for the injury to the part taken but also for the injury, if any, to the remainder. (§ 1263.410, subd. (a).) Compensation for injury to the remainder is the amount of the damage to the remainder caused by the taking, reduced by the amount of the benefit to the remainder caused by the taking. (§ 1263.410, subd. (b).) Such compensation is commonly called "severance damages." (*City of San Diego v. Neumann, supra,* 6 Cal.4th at p. 741.)

The procedures governing eminent domain actions differ in some respects from those governing other actions. For example, "all issues except the sole issue relating to compensation . . . are to be tried by the court." (*People v. Ricciardi* (1943) 23 Cal.2d 390, 402 [144 P.2d 799].) The

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

defendant (i.e., the property owner) shall present evidence on the issue of compensation first and shall commence and conclude the argument. (§ 1260.210, subd. (a).) And, "[e]xcept as otherwise provided by statute, neither the plaintiff nor the defendant has the burden of proof on the issue of compensation." (§ 1260.210, subd. (b).) In this respect, California law differs from that of most other states. (See 5 Nichols on Eminent Domain (3d ed. 2006) § 18.02[3], pp. 18-12.1 to 18-20, fn. 8.)

### A. The Reasonable Probability of Rezoning

The Court of Appeal found that that the trial court improperly excluded— and thus prevented Campus Crusade's appraisal experts from relying on— evidence that the highest and best use of the property was comprehensive development for residential, commercial, industrial, and recreational uses. In the view of the Court of Appeal (and echoed by Campus Crusade here), the trier of fact should have been allowed to consider these prospective uses in assessing the value of the property taken and the damage to the remainder; instead, the trial court usurped the jury's role by deciding for itself, prior to trial, whether there was a reasonable probability the property could be rezoned to permit these other uses. MWD, by contrast, argues that the question whether there was a reasonable probability of the property being rezoned is properly entrusted to the court, not the jury, and that the court's pretrial determination that rezoning was not reasonably probable here is supported by substantial evidence.

There is no dispute that the existing zoning did not authorize the develop- ment envisioned by Campus Crusade. The portion of the property lying within the City of San Bernardino was zoned residential low, which imposed a maximum density of 3.1 dwelling units per gross acre and did not allow commercial uses. The remaining property was zoned rural living, which imposed a minimum three-acre lot size; single residential, which permitted a slightly higher density; and resource conservation, which imposed a mini- mum 40-acre lot size. The existing buildings on the property, including the hotel, predated the current zoning and were operating as legal nonconforming uses.

Prior to trial, MWD filed a motion in limine "for an order prohibiting the presentation of any evidence treating Campus Crusade's property as zoned for anything other than the uses permitted by the Resource Conservation zone unless, and until, Campus Crusade has borne its burden of proof and

convinced the Court, outside of the jury's presence, that there is substantial evidence of a reasonable probability of rezoning on the date of value." After conducting a pretrial evidentiary hearing, Judge Wade granted the motion. He agreed with MWD that the question whether a reasonable probability of rezoning existed in the near future was for the court to decide, and he determined, based on the evidence presented by both sides at the pretrial hearing, that "it is not reasonably probable that the subject property would be rezoned in the reasonably near future." As a result, Judge Wade prohibited Campus Crusade's appraisers "from valuing the remainder as anything other than Resource Conservation." Unfortunately, the trial court thereby usurped the role of the jury in valuing the property.

"Where due to zoning restrictions the condemned property is not presently available for use to which it is otherwise geographically and economically adaptable, the condemnee is entitled to show a reasonable probability of a zoning change in the near future and thus to establish such use as the highest and best use of the property." (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 867 [135 Cal.Rptr. 647, 558 P.2d 545].) The jury's role in this assessment is settled. " '[T]he determination as to whether or not there is a reasonable probability of a [use] change is ordinarily a question of fact for the jury.' " (*Redevelopment Agency v. Contra Costa Theatre, Inc.* (1982) 135 Cal.App.3d 73, 84 [185 Cal.Rptr. 159], quoting *People ex rel. Dept. Pub. Wks. v. Arthofer* (1966) 245 Cal.App.2d 454, 467 [54 Cal.Rptr. 878]; see *Community Redevelopment Agency v. Henderson* (1967) 251 Cal.App.2d 336, 345 [59 Cal.Rptr. 311] ["the court . . . correctly left to the jury the determination whether there was a reasonable probability of a zone change"]; see also *City of Los Angeles v. Decker, supra,* 18 Cal.3d at p. 872 ["the purported need for airport parking and the suitability of defendant's property for that purpose were critical to the issue of valuation"]; *People ex rel. Dept. of Public Works v. Donovan* (1962) 57 Cal.2d 346, 354 [19 Cal.Rptr. 473, 369 P.2d 1] [criticizing defendant's proffered jury instruction concerning the probability of rezoning where the evidence was conflicting because of "the possible implication that the court had concluded as a matter of law that there was a reasonable probability of a zoning change"]; accord, 4 Nichols on Eminent Domain, *supra,* § 12C.03[3], p. 12C-82 ["The existence of a reasonable probability of an imminent change in zoning is a question of fact"]; *id.,* § 12C.03[3], p. 12C-88 ["it is for the jury to consider the weight to be given the testimony based on such probability, whether there is such probability, and its effect on the fair market value"].)

■ Before such evidence may be presented to the jury, however, the trial court must first determine whether there is sufficient evidence that would permit a jury to conclude there is a reasonable probability of rezoning in the near future. Evidence of a reasonable probability of a zoning change in the near future " 'must at least be in accordance with the usual minimum evidentiary requirements, and that which is purely speculative, wholly guess work and conjectural, is inadmissible.' " (*City of Los Angeles v. Decker, supra,* 18 Cal.3d at p. 868.) The evidence, if credited, must also be sufficient to establish that rezoning is reasonably probable. (*People ex rel. Dept. Pub. Wks. v. Arthofer, supra,* 245 Cal.App.2d at p. 466 [upholding the exclusion of testimony from an expert whose opinion "was based on a *'reasonable possibility'* instead of a *'reasonable probability'* of zone change"].) If the trial court determines that no fact finder could find a reasonable probability of rezoning on the record presented, it may exclude all evidence and opinions of value based on a use other than that authorized by the existing zoning. (*Id.* at p. 467; accord, *City of San Diego v. Neumann, supra,* 6 Cal.4th at p. 744 [evidence of a probability of rezoning is relevant only " 'to the extent that the probability of such a prospective use affects the market value' "].) If, on the other hand, the trial court determines that there is sufficient evidence of a reasonable probability of rezoning to warrant submitting the issue to the jury, it is for the jury, in considering the weight to be given valuation testimony based upon a reasonable probability of rezoning, to determine whether there was a reasonable probability of rezoning and, if so, its effect on the market value of the property. Thus, before a jury may even reach the question whether a use that was unauthorized by the existing zoning otherwise meets the criteria of a highest and best use, the jury must first find that there was a reasonable probability of rezoning to permit that use. Once that has been established, neither party bears the burden to persuade the fact finder of the effect of this probability on the valuation of the property. (§ 1260.210, subd. (b); accord, 2 Judicial Council of Cal. Civ. Jury Instns. (2007) CACI No. 3503; cf. Evid. Code, § 403, subd. (c)(1), (2).)

Relying on language in certain Court of Appeal decisions, MWD contends that the property owner bears the burden of proving that a reasonable probability of rezoning exists. MWD relies in particular on *County of San Diego v. Rancho Vista Del Mar, Inc.* (1993) 16 Cal.App.4th 1046, 1058 [20 Cal.Rptr.2d 675] (*Rancho Vista Del Mar*), which asserted that "[t]he property owner has the burden of showing a reasonable probability of a change in the restrictions on the property," as well as on *City of San Diego v. Rancho Penasquitos Partnership* (2003) 105 Cal.App.4th 1013, 1028 [130 Cal.Rptr.2d

108], and *City of San Diego v. Barratt American, Inc.* (2005) 128 Cal.App.4th 917, 934 [27 Cal.Rptr.3d 527], which simply quote this passage from *Rancho Vista Del Mar*. But these statements must be interpreted against the backdrop of section 1260.210, which provides: "(a) The defendant shall present his evidence on the issue of compensation first and shall commence and conclude the argument. [¶] (b) Except as otherwise provided by statute, neither the plaintiff nor the defendant has the burden of proof on the issue of compensation."

What does section 1260.210, subdivision (b) mean when it says that neither party "has the burden of proof on the issue of compensation"? "We begin with a discussion of key terms: burden of proof and burden of producing evidence. Attorneys, judges, and commentators often have confused these terms and the concepts they represent. As the United States Supreme Court observed, 'For many years the term "burden of proof" was ambiguous because the term was used to describe two distinct concepts. Burden of proof was frequently used to refer to what we now call the burden of persuasion—the notion that if the evidence is evenly balanced, the party that bears the burden of persuasion must lose. But it was also used to refer to what we now call the burden of production—a party's obligation to come forward with evidence to support its claim.' " (*Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1666–1667 [3 Cal.Rptr.3d 279], italics omitted.) With those definitions in mind, we can now construe section 1260.210. Subdivision (a) articulates a *burden of production*, which is merely the burden of going forward with (or producing) some evidence of a material fact. (*Redevelopment Agency v. Metropolitan Theatres Corp.* (1989) 215 Cal.App.3d 808, 811, fn. 3 [263 Cal.Rptr. 637]; see generally *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 862 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Here, the property owner has the burden to produce evidence to support a finding that rezoning is reasonably probable. Once that burden has been satisfied, however, subdivision (b) makes it clear that neither party bears a particular *burden of persuasion* with respect to convincing the trier of fact that the reasonable probability exists or what effect such probability would have on the valuation of the property.

We thus understand the "burden" described in *Rancho Vista Del Mar, supra,* 16 Cal.App.4th 1046, 1058, and its progeny to be the burden of production, not the burden of persuasion. This accords with the Law Revision Commission comment to section 1260.210, which explains that "[a]bsent the production of evidence by one party, the trier of fact will determine compensation solely from the other party's evidence, but neither party should be made to

appear to bear some greater burden of persuasion than the other."[3] (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (1982 ed.) foll. § 1260.210, p. 746.)

■ Accordingly, when presented with a proffer that there is a highest and best use that is not permitted by the property's current zoning, the trial court should examine whether the proffer supplies sufficient evidence to permit *the jury* to find that there was a reasonable probability of rezoning to permit that use in the near future. The jury should then be instructed that it may consider the change in use, provided that it first finds a reasonable probability the property could be rezoned in the near future. In this case, however, the trial court collapsed these two steps into one by deciding, prior to trial, whether *it* was convinced there was a reasonable probability of rezoning. Because the trial court examined the evidence of rezoning under an unduly rigorous standard, we direct the Court of Appeal to remand the matter to the trial court to reexamine the record under the correct standard in the first instance. (E.g., *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 802–803 [85 Cal.Rptr.2d 844, 978 P.2d 2]; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 889 [64 Cal.Rptr.2d 484].)

### B. *Severance Damages*

The Court of Appeal also found that the trial court usurped the jury's role by purporting to determine whether Campus Crusade had proven an entitlement to severance damages and then excluding evidence of such severance damages from the trial. The Court of Appeal held that it was for the trier of fact to determine whether the fear of a pipeline rupture during an earthquake and whether the impact of the delay in construction on Campus Crusade's ability to market and finance the property negatively affected the value of the property not taken—or, in other words, whether these factors established severance damages. MWD, on the other hand, contends that the trial court should decide first whether severance damages exist; if so, only then does the jury determine the amount of those damages. We agree with the Court of Appeal, but only in part.

■ Severance damages, as noted above, consist generally of the diminution in the fair market value of the remainder property caused by the project. " 'Where the property taken constitutes only a part of a larger parcel, the

---

[3] MWD relies as well on our statement in *City of Los Angeles v. Decker, supra,* 18 Cal.3d at page 868, that " '[t]he burden of proof as to reasonable probability of zone change is on the landowner.' " But, as MWD concedes, the trial in *Decker* preceded the effective date of section 1260.210, and *Decker* did not purport to decide the new law's effect other than to alert the trial court to its existence as "guidance" on retrial. (*City of Los Angeles v. Decker, supra,* 18 Cal.3d at p. 872.)

owner is entitled to recover, *inter alia*, the difference in the fair market value of his property in its "before" condition and the fair market value of the remaining portion thereof after the construction of the improvement on the portion taken. Items such as view, access to beach property, freedom from noise, etc. are unquestionably matters which a willing buyer in the open market would consider in determining the price he would pay for any given piece of real property.' [Citation.] Severance damages are not limited to special and direct damages, but can be based on *any factor*, resulting from the project, that causes a decline in the fair market value of the property." (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 712 [66 Cal.Rptr.2d 630, 941 P.2d 809], italics added (*Continental Development*).)

 The property owner in an eminent domain action "is entitled to a jury trial on the issue of just compensation." (*Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805, 816 [31 Cal.Rptr. 316, 382 P.2d 356].) Because a condemnation suit is a special proceeding, however, "all issues except the sole issue relating to compensation[] are to be tried by the court," including, "except those relating to compensation, the issues of fact." (*People v. Ricciardi, supra,* 23 Cal.2d at p. 402.) " 'It is only the "compensation," the "award," which our constitution declares shall be found and fixed by a jury. All other questions of fact, or of mixed fact and law, are to be tried, as in many other jurisdictions they are tried, without reference to a jury.' " (*Ibid.*)

In support of its theory that entitlement to severance damages is for the court and only the amount thereof is for the jury, MWD points to certain issues related to severance damages that we have deemed issues for the trial court. For example, we have held that what constitutes the larger parcel (for purposes of determining severance damages) "is essentially a question of law for the determination of the court" (*Oakland v. Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 397 [153 P. 705]); whether separate parcels may be aggregated and considered as one larger parcel is "an issue of law to be decided by the trial court" (*City of San Diego v. Neumann, supra,* 6 Cal.4th at p. 757); and whether a taking has substantially impaired access to the remaining property is "a matter of law" for the court (*Breidert v. Southern Pac. Co.* (1964) 61 Cal.2d 659, 664 [39 Cal.Rptr. 903, 394 P.2d 719]). Similarly, it is for the trial court to decide whether a party had acquired an avigation easement over a neighboring property that was condemned (*Pacific Gas & E. Co. v. Peterson* (1969) 270 Cal.App.2d 434, 438 [75 Cal.Rptr. 673]) and, more generally, to determine whether a party had a cognizable legal interest in the condemned property. (*County of San Diego v. Miller* (1980) 102 Cal.App.3d 424, 433 [162 Cal.Rptr. 480].)

Both sides here thus agree that the court, not the jury, must make certain determinations that are a predicate to the award of severance damages. But MWD is on weaker ground when it attempts to derive from the above cases a general rule that "as a matter of constitutional and decisional law, *all* issues having to do with the existence of, or entitlement to, severance damages are entrusted to the trial judge," such that "[o]nly after the trial judge has determined that severance damages exist does the jury consider the amount of those severance damages." MWD's proposed rule assumes that questions relating to the measurement of severance damages can be readily distinguished from questions relating to the entitlement to them in the first place but, as we have previously cautioned, the two concepts are not necessarily "so easily separable." (*City of San Diego v. Neumann, supra,* 6 Cal.4th at p. 757.) Even if these two concepts can be separated for purposes of allocating decisionmaking between the court and the jury, MWD's proposed rule does not find much support in the law. Severance damages "normally are measured by comparing the fair market value of the remainder before and after the taking." (*City of San Diego v. Neumann, supra,* 6 Cal.4th at p. 745.) The fair market value of a property is a fact to be determined by the jury. (*Oakland v. Pacific Coast Lumber etc. Co., supra,* 171 Cal. at p. 400; *San Diego Land etc. Co. v. Neale* (1891) 88 Cal. 50, 57 [25 P. 977].) "The jury is entitled to and should consider those factors which a buyer would take into consideration in arriving at a fair market value, were [the buyer] contemplating a purchase of the property." (*People ex rel. Dept. of Public Works v. Donovan, supra,* 57 Cal.2d at p. 352.)

The factors Campus Crusade identified below—e.g., fear that the pipeline will rupture in an earthquake, negative visual and aesthetic impacts on the landscaping, and limitations on potential development caused by grading restrictions and placement of the pipeline—at least arguably have the potential of affecting the market value of the remaining property.[4] As long as the effect of these factors on market value is not conjectural, speculative, or remote, it is for the *jury* to decide the extent to which they may affect the value of the property. (*City of Pasadena v. Stimson* (1891) 91 Cal. 238, 259 [27 P. 604] [trial court erred in precluding jury from deciding whether the temporary escape of sewer gas during reasonable repairs to the sewer reduced the market value of abutting property]; *San Diego Gas & Electric Co. v. Lux Land Co.* (1961) 194 Cal.App.2d 472, 482 [14 Cal.Rptr. 899] [whether appraisers should have considered the effects of unsightly towers, damage to existing views, the shape of the remaining land, and interference with radio reception "were questions of fact for the jury to determine"]; *People v. O'Connor* (1939) 31 Cal.App.2d 157, 159 [87 P.2d 702] [the effects of widening the highway, such as decreasing the distance from the house to the

---

[4] We need not decide whether Campus Crusade satisfied its burden of production with respect to these factors inasmuch as that issue was not included in our grant of review.

highway, adverse impact on landscaping, and increased traffic noise and hazards, were proper subjects of expert testimony "and the jury could determine what weight to give the opinions in proportion to the weight the reasons had with them"]; see generally *Continental Development, supra*, 16 Cal.4th at p. 718 ["in determining a landowner's *entitlement* to severance damages, the *fact finder* . . . shall consider competent evidence relevant to any conditions caused by the project that affect the remainder property's fair market value, insofar as such evidence is neither conjectural nor speculative" (italics added)].)

By contrast, the issues we have reserved for the trial court in condemnation actions have been issues of law—or mixed issues of law and fact where the legal issues predominate, even if there are also underlying disputes of fact—antecedent to the valuation of the property and the question of severance damages. (See *Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1117 [125 Cal.Rptr.2d 12].) In such circumstances, reserving the issue for the court is consistent with the state constitutional right to a jury trial on the issue of just compensation and facilitates the conduct of the trial. (Cf. *Merced Irrigation Dist. v. Woolstenhulme* (1971) 4 Cal.3d 478, 498, fn. 12 [93 Cal.Rptr. 833, 483 P.2d 1].) Once the court performs its role—e.g., once the court finds that the taking has substantially impaired the property owner's right of access—it is for the jury to determine the effect of the impairment, if any, on the property's market value. (*People ex rel. Dept. of Pub. Wks. v. Presley* (1966) 239 Cal.App.2d 309, 313 [48 Cal.Rptr. 672].) Similarly, where the property owner produces evidence tending to show that some other aspect of the taking—such as the risk of a pipeline rupture—"naturally tends to and actually does decrease the market value" of the remaining property, it is for the jury to weigh its effect on the value of the property, as long as the effect is not speculative, conjectural, or remote. (*Gas & Electric Co. v. Miller & Lux Inc.* (1931) 118 Cal.App. 140, 144 [5 P.2d 34].)

MWD then contends that, even if such factors are for the jury to consider, the property owner still bears the burden to prove the existence of severance damages. But this misconceives the nature of severance damages, which is simply a shorthand term describing the diminution in the market value of the remaining property as a result of a taking and, hence, of describing the compensation for the property owner's loss. (*Ark. Hwy. Comm. v. Lewis* (1968) 243 Ark. 943 [422 S.W.2d 866, 868].) It is plain that the property owner bears the burden of *producing* evidence tending to show the diminution in market value under section 1260.210, subdivision (a) (*Redevelopment Agency v. Metropolitan Theatres Corp., supra*, 215 Cal.App.3d at p. 811, fn. 3)—otherwise neither the testifying experts nor the jury would have any basis for justifying severance damages—but the jury then decides what effect (if any) the evidence, taken "as a whole," may have

on the value of the property. (*Pacific Gas & Elec. Co. v. Hufford* (1957) 49 Cal.2d 545, 561 [319 P.2d 1033]; *San Diego Gas & Electric Co. v. Daley* (1988) 205 Cal.App.3d 1334, 1351 [253 Cal.Rptr. 144]; see generally *People v. Thompson* (1954) 43 Cal.2d 13, 25 [271 P.2d 507] ["It became a question of fact then, which the court properly left to the jury, whether severance damage occurred and, if so, in what amount"].) Under section 1260.210, subdivision (b), the fact finder must ascertain the value of the property before and after the taking and fix the amount of compensation without assigning a burden of persuasion to either party. "As the Commissioners on Uniform State Laws state in their Comment to Unif. Eminent Domain Code § 904, 13 U.L.A. 93–94 (1980), '[i]t seems difficult to assign an intelligible meaning to the concept of "burden of proof" in the eminent domain context, since the pleadings are not required to allege or deny the amount of compensation claimed, and the ultimate standard of decision is the constitutional rule of "just compensation." ' Necessarily, as they go on to say, 'the ultimate determination necessarily reflects the weight and degree of credibility accorded to [conflicting] estimates.' " (*Winooski Hydroelectric Co. v. Five Acres of Land* (2d Cir. 1985) 769 F.2d 79, 84.)

The foregoing is sufficient to dispose of most of the issues presented in the petition for review concerning severance damages. Having now determined the respective roles of the judge and jury in connection with severance damages and the nonexistence of a burden of persuasion with respect to such damages, we have no cause to determine whether the trial court overstepped its bounds in excluding evidence of certain severance damages prior to trial or whether the trial court erred in finding that certain other severance damages had not been established at trial, inasmuch as MWD (with one exception) has not challenged here any part of the Court of Appeal's opinion relating to severance damages, nor did Campus Crusade challenge in its answer any such ruling by the trial court.

The lone exception concerns Campus Crusade's attempt to recover temporary severance damages for the allegedly adverse impact of the project on its ability to use, develop, and market its property during the seven-year period of construction. The trial court granted MWD's motion in limine to exclude evidence of such damages, observing that "[t]he time period of construction may result in severance damages as to rental losses, for example, but not as to marketability." The Court of Appeal disagreed and held that Campus Crusade should have been allowed to present evidence to show how the project as proposed interfered with its plans for developing the property, "especially in regards to obtaining financing and marketing the property."

In support of its claim of temporary severance damages, Campus Crusade relies on *Placer County Water Agency v. Hofman* (1985) 165 Cal.App.3d 890 [211 Cal.Rptr. 894], but the case provides scant support. In *Hofman*, the owner alleged that the agency's temporary easement for the construction of a pipeline across the owner's property "substantially prevented use of the property for cattle and sheep ranching" and sought damages in the form of the cost to rent comparable ranching facilities. (*Hofman, supra,* 165 Cal.App.3d at p. 894.) In other words, the taking interfered with the owner's *actual* intended use of the property. Here, by contrast, Campus Crusade has not identified any intended use of the property during the relevant period, nor has it identified any specific loss attributable to the delay in construction. (*City of Los Angeles v. Ricards* (1973) 10 Cal.3d 385, 388 [110 Cal.Rptr. 489, 515 P.2d 585]; *Orange County Flood Control Dist. v. Sunny Crest Dairy, Inc.* (1978) 77 Cal.App.3d 742, 762 [143 Cal.Rptr. 803].) Although the Court of Appeal was correct in saying that a property owner generally should be able "to present evidence to show whether and to what extent the delay disrupted its use of the remaining property," Campus Crusade has failed to support its allegation of damages in this court with any specificity—or, indeed, with any citation to the record.

*If* Campus Crusade had sold the property during the construction period and *if* the ongoing construction had temporarily lowered the sales price of the property, it would appear that Campus Crusade would be entitled to recover that loss from MWD. (See *City of Los Angeles v. Ricards, supra,* 10 Cal.3d at p. 388.) But the mere fact of a delay associated with construction of the pipeline did not, without more, entitle Campus Crusade to temporary severance damages relating to the financing or marketing of the property in this eminent domain action. (*People ex rel. Dept. Pub. Wks. v. Home Trust Investment Co.* (1970) 8 Cal.App.3d 1022, 1026–1027 [87 Cal.Rptr. 722] [owner failed to show how it had been damaged by decade-long delay in constructing a freeway].)

 This is not to say, however, that Campus Crusade is barred from recovering damages for actual injury it may have suffered during the construction of the pipeline. On remand, Campus Crusade may have the opportunity before the trial court to create an appropriate record to support its claim of severance damages. In addition, "[w]hen the condemnation action is tried before the improvement is constructed, and substantial although temporary interference with the property owner's rights of possession or access occurs during construction, the property owner may maintain a subsequent action for such damage occurring during construction." (*People v. Ayon* (1960) 54 Cal.2d 217, 229 [5 Cal.Rptr. 151, 352 P.2d 519].)

## DISPOSITION

The judgment of the Court of Appeal is affirmed in part and reversed in part and the matter is remanded to the Court of Appeal for further proceedings not inconsistent with this opinion.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

Respondent's petition for a rehearing was denied September 12, 2007.