[No. 42952. En Banc. July 3, 1974.]

THE STATE OF WASHINGTON, *Appellant,* v. DOLLY LACEY, *Individually and as Executrix, et al., Respondents.*

[See Ann. 143 A.L.R. 672, 874, 56 A.L.R.2d 13, 191; 27 Am. Jur. 2d, Eminent Domain § 476.]

34

 

*Slade Gorton, Attorney General,* and *Robert A. Wright* and *Charles F. Secrest, Assistants,* for appellant.

*Paul Sinnitt* and *Richard W. Pierson* (of *Thom, Mussehl, Navoni, Hoff & Pierson*), for respondents.

UTTER, J.—The State of Washington appeals from an order of the trial court awarding attorneys' fees and interest to respondent Dolly Lacey, individually and as executrix of the estate of Robert M. Lacey, deceased, in a condemnation action. We affirm the trial court's action except insofar as it awards 8 percent interest to respondents from the date of judgment, August 2, 1972, until the date of payment, July 12, 1973.

The State instituted condemnation proceedings for approximately 31 acres of land owned by respondents. The parties could not agree on the price, and a stipulated order for immediate use and possession was entered on January 29, 1971. A trial on the issue of damages was commenced on May 24, 1971, and ended in a mistrial June 28, 1971. Respondents petitioned the Court of Appeals for a writ of certiorari on June 28, 1971, to review the trial court's ruling on the mistrial issue and the petition was denied by that court on November 15, 1971.

A second trial commenced May 8, 1972, resulting in a jury verdict for respondents on June 2, 1972, for $345,000. Judgment and a decree of appropriation was entered August 2, 1972, and on August 22, 1972, the State appealed from the judgment entered on the verdict and from the denial of its motion for new trial entered following the adverse jury verdict. Judgment on the verdict was affirmed by the Court of Appeals on March 16, 1973 (*State v. Lacey,* 8 Wn. App. 542, 507 P.2d 1206 (1973)), and the cause

remanded to Superior Court to determine reasonable attorneys' fees.

On July 12, 1973, the State paid into the registry of the court $238,400, the difference between the $345,000 damage award and the $106,600 already deposited into court on January 29, 1971. This was done pursuant to the stipulated order for immediate use and possession. The State also paid the sum of $20,260.73 into the registry of the court as the interest it believed was owing on the $238,400 principle payment. This figure was arrived at by computing the interest owing at 6 percent per annum for the period between January 29, 1971, the date the stipulated order for immediate use and possession was ordered, and July 12, 1973, the date of payment of the $238,400 excess owing on the judgment. This sum of interest excluded the period during which respondents petitioned the Court of Appeals for a writ of certiorari after the first trial ended in mistrial and the period during which the State appealed to the Court of Appeals from the judgment entered on the verdict.

The trial court then determined on July 25, 1973, that respondents were entitled to interest at the rate of 6 percent from January 29, 1971, the date of the stipulated order for immediate use and possession, until the date of entry of judgment on the verdict, August 2, 1972. It also concluded respondents were entitled to interest at the rate of 8 percent from August 2, 1972, the date of judgment, until July 12, 1973, and, further, that respondents were entitled to interest at the rate of 8 percent during the pendency of this appeal.

Respondents became entitled to a reasonable attorney fee under RCW 8.25.070 inasmuch as the judgment at trial on damages was in excess of 110 percent of the State's highest written offer made more than 30 days prior to commencement of the trial. The trial court found by the terms of that statute that attorneys Sinnitt and Pierson, as counsel for respondents, should be awarded reasonable attorneys' fees of $50 per hour and $45 per hour. Total fees awarded were

$24,700 and $41,355 respectively. The trial court's award was premised on its interpretation of the Pierce County minimum bar fee schedule which provides:

Hourly rate, not less than ......................$35.00
This minimum should be adjusted upward to reflect expertise in a particular specialty.

The trial court properly awarded interest to respondents during the periods from June 28, 1971, to November 15, 1971, when respondents' petition for certiorari was heard and denied, and from August 22, 1972, to March 16, 1973, the period during which the State's appeal on a verdict to the Court of Appeals was being heard and denied. It would appear, on first examination, that there is a conflict between the court's action and the language of RCW 8.28.040, which provides:

Interest on verdict fixed—Suspension during pendency of appeal. Whenever in any eminent domain proceeding, heretofore or hereafter instituted for the taking or damaging of private property, a verdict shall have been returned by the jury, or by the court if the case be tried without a jury, fixing the amount to be paid as compensation for the property so to be taken or damaged, such verdict shall bear interest at the rate of six percent per annum from the date of its entry to the date of payment thereof: *Provided,* That the running of such interest shall be suspended, and such interest shall not accrue, for any period of time during which the entry of final judgment in such proceeding shall have been delayed solely by the pendency of an appeal taken in such proceeding.

An examination of the history of the constitutional and statutory provisions relating to eminent domain proceedings resolves this apparent conflict. Property owners historically have been protected from having their property taken or damaged until just compensation was first paid.

No private property shall be taken or damaged for public or private use without just compensation having been first made . . .

Const. art. 1, § 16. The legislature, in addition, provided for interest at 6 percent on eminent domain verdicts in 1943.

RCW 8.28.040. Interest was also suspended during an appeal which delayed entry of a final judgment. At that time there was no provision for the State to take possession of the property prior to judgment. Subsequently, laws were enacted which allowed the property owner, by his consent, to give the State immediate possession prior to verdict and judgment by payment into court of the State's offer of compensation. RCW 8.04.090.[1] Interest on that offer is provided for in RCW 8.04.092.[2] The apparent purpose of these acts was to make it advantageous to the owner to consent to the early loss of his property in return for receipt of interest on the State's offer prior to the verdict and judgment.

When legislative concern for the property owners' interest is considered, there is no conflict between the statutes. If limited to condemnation proceedings where the owner does not surrender possession prior to trial and verdict, RCW 8.28.040 prevents financial harm to the State from a delay occasioned by appeal. The State is not re-

---

[1] RCW 8.04.090:

"Order for immediate possession—Payment of tender into court. In case the state shall require immediate possession and use of the property sought to be condemned . . . the attorney general may stipulate with respondents in accordance with the provisions of this section and RCW 8.04.092 and 8.04.093 [8.04.094] for an order of immediate possession and use, and file with the clerk of the court wherein the action is pending, a certificate of the state's requirement of immediate possession and use of the land, which shall state the amount of money offered to the respondents and shall further state that such offer constitutes a continuing tender of such amount."

[2] RCW 8.04.092:

"Determination of adequacy of payment—Jury trial—Costs. The amount paid into court shall constitute just compensation paid for the taking of such property: *Provided,* That respondents may, in the same action, request a trial for the purpose of assessing the amount of compensation to be made and the amount of damages arising from the taking. In the event that, pursuant to such hearing, the verdict of the jury, unless a jury be waived by all parties, or decision of the court, shall award respondents an amount in excess of the tender, the court shall order such excess paid to respondents with interest thereon from the time of the entry of the order of immediate possession, and shall charge the costs of the action to the state."

quired to pay interest while an appeal is pending and the owner continues in the beneficial use of his property. *State v. Laws,* 51 Wn.2d 346, 318 P.2d 321, 322 P.2d 134 (1957); *State v. Calkins,* 54 Wn.2d 521, 342 P.2d 620 (1959).

Where the owner does not remain in possession, the application of RCW 8.28.040 would deprive the owner who agrees to surrender his land early of his only incentive to surrender possession, the right to interest on the value of the property surrendered. To rule otherwise would deprive the consenting property owner of his right to interest where the State committed a trial error and the owner attempted to protect himself by appeal or petition for writ of certiorari. This deprivation would occur whether the State appealed on meritorious or frivolous grounds. To so construe the statute would have the effect of inhibiting, not encouraging a property owner to stipulate to early possession of his property and would defeat the intent of the legislature in enacting RCW 8.04.090 and .092.

The interest suspension provisions of RCW 8.28.040 do not apply to the statutes enacted later in time when viewed either as a matter of chronology or legislative intent. The holding of *In re Anacortes,* 81 Wn.2d 166, 170, 500 P.2d 546 (1972), which directed payment of interest of 6 percent per annum from the date of stipulation of immediate possession until the date of payment of the verdicts in the case, in spite of intervening appeals, is consistent with our reasoning in this case.

■ ■ We cannot agree, however, with respondents' contention that they are entitled to 8 percent interest on the verdict following entry of judgment. The provision of a rate of interest for eminent domain verdicts of 6 percent in RCW 8.28.040 is not on its face inconsistent with the legislative intent behind the enactment of RCW 8.04.090 and .092. The enactment of a general statute on judgments allowing interest of 8 percent in 1969, RCW 4.56.110(2), did not expressly repeal any provisions of RCW 8.28.040.

The reasoning in *Renton v. Scott Pac. Terminal, Inc.,* 9

Wn. App. 364, 512 P.2d 1137 (1973), on this subject, is persuasive. There the court noted that RCW 8.28.040 expressly and specifically subjects the State to its provisions while RCW 4.56.110 does not. The court refused to find a repeal by implication of RCW 8.28.040 by RCW 4.56.110, and noted that "[u]nless the two acts are so clearly inconsistent they cannot both be given effect, or there is a clear legislative intent that the later general provision shall have universal application a general statute will not be held to have repealed a specific statute by implication." *Renton v. Scott Pac. Terminal, Inc., supra* at 377.

The holding of *State ex rel. Donofrio v. Humes,* 34 Wash. 347, 75 P. 348 (1904), is not inconsistent with this result as that case was decided at a time when there was no specific statute relating to liability of the government for interest on eminent domain proceedings.

We have held that a property owner is entitled to interest on the amount awarded in an eminent domain proceeding "in lieu of damages" prior to the time "where a condemnation proceeding is discontinued or abandoned pursuant to RCW 8.12.530." *In re Seattle,* 81 Wn.2d 652, 659, 504 P.2d 292 (1972). There we treated the judgment of dismissal as a general judgment to which RCW 4.56.110 applies. Unlike the case now before us, in *Seattle* and all cases upon which it relies, the condemnee had retained possession of the property pending the condemnor's right to exercise its option to abandon the proceeding. We observed the owner's value in the land was impaired because of the cloud of condemnation which hung over it and that, therefore, the City's subsequent abandonment of its condemnation action, standing alone, would not make the owner whole. We therefore affirmed the judgment of the trial court and agreed with it that the landowner was entitled to interest as though the condemnation judgment was a general judgment (RCW 4.56.110). In the instant case, however, unlike *In re Seattle, supra,* there is no judgment of dismissal of the condemnation action. Unlike the *Seattle*

case, the State here paid a substantial consideration into court in return for early possession of the property, and the condemnation action ultimately did result in the transfer of title to the State for a fair compensation. The interest which accrued on the unpaid condemnation value was not a substitution for damages as was the case in *In re Seattle, supra.* This case is, therefore, distinguishable from the *Seattle* case and, accordingly, RCW 4.56.110 is inapplicable here.

Appellant's final contention is that the trial court erred in awarding attorneys' fees to respondents in excess of $35 an hour, the sum it contends is the minimum bar fee schedule provided for by the Pierce County Bar Association. The applicable statute, RCW 8.25.070, as amended in August of 1971, provides: "Reasonable attorney fees as authorized in this section shall not exceed the general trial rate, per day for actual trial time and the general hourly rate for preparation as provided in the minimum bar fee schedule of the county or judicial district in which the proceeding was instituted . . ." The Pierce County minimum bar fee schedule provided as to the minimum hourly and trial rate, an hourly rate not less than $35, which minimum should be adjusted upward to reflect expertise in a particular specialty.

■ We have previously noted the intent of the legislature, in amending RCW 8.25.070, was to provide for allowance of fees based solely on minimum bar fee schedules for trial and hourly rates. *In re Seattle,* 79 Wn.2d 490, 494, 487 P.2d 777 (1971). This was a reaction to fees allowed under the prior statute based upon contingent fee agreements. There is nothing in this case to indicate that the trial court failed to consider the terms of the minimum bar schedule in arriving at this award. It considered affidavits of respondents' counsel, the report of the Pierce County bar committee, and arrived at its own independent determination after considering lengthy testimony regarding what reasonable attorneys' fees in this case would be.

The wording of a particular county fee schedule might be such as to remove all discretion from the trial court in applying a fixed hourly sum. *In re Bellingham,* 10 Wn. App. 606, 519 P.2d 1330 (1974). The Pierce County schedule, however, did not remove all discretion from the trial court in determining what the meaning of "adjusted upward to reflect expertise" was. This reflected in the court's comment on the matter that "The Court is still convinced that the minimum fee schedule of thirty-five dollars is not appropriate, and the proviso under that particular division of the minimum fee schedule points out adjustments should be made considering the expertise of counsel and so forth."

The State did not present testimony that asserted a different interpretation of the Pierce County minimum bar fee schedule. The court's determination of hourly rates differed from the hourly rate recommended by the Pierce County Bar Association committee appointed by the court. The committee's recommendation was $60 an hour for Mr. Sinnitt and $50 an hour for Mr. Pierson with compensation at $60 for appellate work. The court's award was $50 an hour for all work performed by Mr. Sinnitt and $45 an hour for all work performed by Mr. Pierson. The court independently evaluated the evidence and accurately applied the words of the statute regarding award of attorney's fees.

The judgment of the trial court is affirmed except insofar as it awards 8 percent from the date of judgment, August 2, 1972, until the date of payment. During that time, 6 percent interest shall be awarded.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.