[No. 41017-6-II.   Division Two.   May 16, 2012.]

THE CITY OF PUYALLUP, *Plaintiff*, v. CARL R. HOGAN ET AL., *Appellants*, BORDERS, INC., *Respondent*.

408

*G. Perrin Walker, Daniel C. Montopoli,* and *Scott D. Winship* (of *Vandeberg Johnson & Gandara*), for appellants.

*Michael M. Fleming, Janis G. White,* and *Ryan P. McBride* (of *Lane Powell PC*), for respondent.

¶1 WORSWICK, A.C.J. — The city of Puyallup condemned a small portion of Carl Hogan's shopping center (Center) for a road construction project that will significantly reduce access to the Center. After a jury awarded Hogan over $5,150,000 in just compensation for the taking, the Center's anchor tenant, Borders, petitioned the trial court for apportionment of that award. The trial court awarded $918,129.18 to Borders in a bench apportionment trial. Hogan appeals, arguing that the trial court erred in (1) denying summary judgment because Borders waived its right to apportionment, (2) calculating Borders' award, (3) exercising its equitable discretion to increase Borders' apportioned award, and (4) awarding Borders prejudgment

interest. Borders cross appeals, arguing that the trial court erred in suspending postjudgment interest. We affirm the trial court on summary judgment, apportionment, and prejudgment interest but reverse the order suspending postjudgment interest.

## FACTS

¶2 Borders entered a commercial lease with Hogan for space in the Center in 2000.[1] The lease included an initial 15-year term and further included five successive 5-year options to renew. Article 22 in the lease addressed eminent domain, stating in pertinent part:

22. **Eminent Domain**

(a) **Demised Premises/Ingress and Egress.** If (i) any portion of the demised premises is expropriated, or (ii) any point of ingress and egress to the public roadways . . . is materially impaired by a public or quasi-public authority . . . so as to render, in [Borders'] sole reasonable opinion, the demised premises unsuitable for the operation of [Borders'] business in the normal course, then [Borders] shall have the option to terminate this lease . . . . During any expropriation or impairment, regardless of the length of time of such expropriation or impairment . . . or whether or not this Lease is terminated as a result of such expropriation or impairment, [Hogan] shall endeavor to provide a reasonable alternative to the impaired point of ingress and egress for the duration of any such expropriation or impairment.

. . . .

(d) **Termination.** *If* this Lease is terminated pursuant to this Article 22, *then* any Rent paid in advance under this Lease shall be refunded to [Borders], and [Borders] shall have an additional sixty (60) days following the termination date within which to remove [Borders'] property from the demised prem-

---

[1] At the time of trial, Borders operated its store in the Center. But, after the trial, Borders filed for Chapter 11 protection and closed all of its stores. Borders and Hogan entered a stipulated order in the bankruptcy court modifying the automatic stay to allow this appeal to continue.

ises; provided, however, that Rent shall be adjusted from and after the date of such expropriation in proportion to the portion of the demised premises in which [Borders] elects to continue operating after such expropriation occurs. *If at the time of any such termination* [Borders] has any *unamortized expenditures* that [Borders] may have made at [Borders'] cost on account of any improvements, alterations, or changes to the demised premises, then [Hogan] shall assign to [Borders] that portion of any award payable as a result of such expropriation as shall equal the unamortized portion of [Borders'] expenditures. *Such unamortized portion* of [Borders'] expenditures shall be determined by multiplying such expenditures by a fraction, the numerator of which shall be the number of remaining years of the Lease term at the time of such expropriation, and the denominator of which shall be the number of remaining years of the Lease term at the time such expenditures shall have been made, plus the number of years for which the Lease term has been subsequently extended; provided, however, [Borders] shall have such right to share in a condemnation award only if the award for such *unamortized expenditures* is made by the expropriating authority in addition to the award for the land, building and other improvements (or portions thereof) comprising the demised premises, although [Borders'] right to receive compensation for damages or to share in any award shall not be affected in any manner hereby if said compensation, damages or award is made by reason of the expropriation of any land or buildings constructed, made or owned by [Borders].

Clerk's Papers (CP) at 129-30 (emphasis added).

¶3 In 2005, Puyallup exercised its powers of eminent domain and began a condemnation proceeding to take a portion of the Center in order to extend 39th Avenue SE. This construction will eliminate the Center's primary entrance and, thus, decrease access to the Center.

¶4 Puyallup and Hogan entered an agreed order of immediate possession and use with the trial court, setting the taking date as July 11, 2007 for just compensation

purposes.[2] The trial court bifurcated the condemnation proceedings. A jury determined the total amount of just compensation for the taking and the trial court then apportioned that award between Hogan and Borders.

¶5 Hogan requested Borders' assistance during the trial's first phase, so that the damage to Borders' leasehold would be included in the total just compensation award. Borders fully cooperated with Hogan. Hogan presented evidence that the road project and the diminished access to Borders would devastate the Center. Hogan argued that the total damages to the center were $11,900,000. But, the jury awarded $5,150,000 for the taking. Puyallup satisfied its judgment in full and ended its involvement in the case. Hogan paid $936,835 into the trial court registry for apportionment among the Center's tenants.

¶6 Borders thereafter filed a notice of claim to share in Hogan's just compensation award for diminished access to the Center. Hogan moved for summary judgment dismissing Borders' claim, arguing that under the lease, Borders had waived its right to apportionment. Hogan argued that Borders could have participated in apportionment only if (a) it had terminated its lease under article 22 or if (b) Puyallup had made a separate award for Borders' unamortized construction expenses, if any, and if that separate award arose from a taking of land or buildings Borders constructed, made, or owned.

¶7 The trial court disagreed, stating, "[I]t is not clear . . . that this lease . . . set out the only possible mechanisms by which Borders can have part of the [just compensation] award apportioned to them." Report of Proceedings (RP) (Feb. 19, 2010) at 23. The trial court denied Hogan's motion but allowed the parties to submit additional briefing on Borders' rights to apportionment if Borders did not terminate its lease.

---

[2] Although Puyallup has neither started nor scheduled construction of the 39th Avenue SE extension, we consider damages as of the date Puyallup took possession.

¶8 Hogan submitted additional briefing, arguing that Borders waived its common law right to participate in apportionment. Hogan claimed that the lease addressed eminent domain and specified that Borders could share in apportionment of a just compensation award only (1) if it terminated its lease or (2) if it met the two other narrow (and unsatisfied) contingencies in article 22. The trial court again denied Hogan's summary judgment motion, stating that the lease's eminent domain provision was "convoluted" and that "questions still remain[ed] . . . as to what the appropriate interpretation of this lease . . . ought to be" because the lease language was ambiguous as to whether the parties intended to waive a lessee's common law right to apportionment. RP (Mar. 12, 2010) at 15-16.

¶9 Hogan submitted additional briefing, again arguing that Borders contracted away its common law right to share in Hogan's just compensation award. But the trial court again denied Hogan's motion for summary judgment, stating:

> I've looked at [the lease] countless . . . times. And my analysis is still the same, that absent a clear limitation on the right to share, Borders ought to be able to share.
>
> This [lease] language is simply not clear . . . at all. The better interpretation . . . seems to be that . . . Borders . . . thought itself to be damaged [by the taking] and that money ought to be given because the leasehold was diminished, that Borders ought to have a shot at sharing . . . in the award.

RP (Apr. 2, 2010) at 23. Thus, the case proceeded to apportionment, during which Hogan argued that the jury attributed only $2,300,000 of its total award to decreased access to the Center.

¶10 At the trial's apportionment phase, Hogan presented Donald Palmer's and Anthony Gibbons's expert testimony that the fair market value of Borders' leasehold declined between $180,000 and $210,000. In making this determination, Gibbons assumed that Borders would not exercise

any of its five successive five-year options to renew and that Hogan would bear approximately $2,200,000 to $2,400,000 in retenanting costs. Gibbons calculated Borders' proportional share of the damages award at $90,882, but he based that calculation on Hogan's claimed $11,900,000 total damage figure, instead of the $5,150,000 the jury actually awarded.

¶11 Borders presented Pamela Lent's expert testimony that Borders' leasehold diminished $3,427,641 in value. Lent assumed that Borders would exercise all five of its options to renew and that Borders would bear the costs of retenanting the space.[3]

¶12 The trial court found that the lease entitled Borders to share in Hogan's just compensation award for diminished access to the Center. The trial court adopted Hogan's methodology for apportioning the award. But the trial court concluded that Borders' evidence was more credible. The trial court concluded that the damages to Borders' leasehold based on the diminished access were $355,801.10.[4] Then, the trial court found that "unique variables" required

---

[3] In reaching this conclusion, Lent accepted Gibbons's expert testimony that retenanting the space would cost approximately $2,277,000.

[4] The trial court set out its calculations for apportioning the just compensation for diminished access in a chart summarized below.

| | |
|---|---|
| Center's damages (total diminution in fair market value due to the taking), as presented by Hogan in the just compensation phase of trial. | $11,900,000 |
| Less | |
| Net present value of diminution of Borders' leasehold ($7 per square foot through 2040) | ($1,400,000) |
| Hogan's fee valuation (less apportionment to Key Bank) | $10,500,000 |
| Less | |
| Damages not related to impaired access (i.e., the taking and costs to cure) | ($2,850,000) |
| **Value of Hogan's remainder damages** | **$7,650,000** |

equitable adjustment of Borders' award. The five equitable factors the trial court considered were:

- The calculation assumes the jury awarded $2,850,000 for "take" damages and costs to cure; however, there is no way to know the basis upon which the jury awarded damages.

- The calculation adopts Borders' view that its leasehold has diminished by $7 per square foot; however, there was evidence presented at trial that $7 per square foot diminution in value is not a realistic figure.

- The calculation assumes that Borders will exercise its five options to renew; however, Borders could mitigate its damages and exercise its right not to renew the lease after 2015.

- The calculation assumes the [p]roject has been built; however, no one knows when the [p]roject will be built and thus when access will be impaired.

- Hogan and Borders have employed different litigation tactics in [the apportionment phase than they did in the just compensation phase of trial].

CP at 829.

| | |
|---|---|
| Net present value of diminution of Borders' leasehold ($7 per square foot through 2040) | $1,400,000 |
| Total of Hogan's and Borders' separate remainder damage valuations | $9,050,000 |
| Proportion of total remainder damage valuations | |
|     Hogan | 84.53 percent |
|     Borders | 15.47 percent |
| Jury awarded just compensation | $5,150,000 |
| Less | |
| Damages not related to impaired access | ($2,850,000) |
| Just compensation for damages for impaired access (i.e., amount to be apportioned) | $2,300,000 |
| Apportionment of just compensation for impaired access | |
|     Hogan | $1,944,198.90 |
|     Borders | $ 355,801.10 |

¶13 Based on these factors, the trial court doubled Borders' award, for a total of $711,602. The trial court explained its decision to equitably double Borders' just compensation award by concluding that the adjusted amount is "roughly equal to the average of 23 [percent] (Borders' square foot percentage of the [p]roperty) of $2,300,000 (the amount Hogan believes should be apportioned) and 23 [percent] of $5,150,000 (the amount Borders thinks should be apportioned)." CP at 830. The trial court further explained that Borders' equitably adjusted award was "roughly proportionate to Hogan's claimed damages in the first trial compared to the damages actually awarded by the jury." CP at 830.

¶14 The trial court also awarded Borders $175,567.97 as its pro rata share of prejudgment interest and $30,959.21 in costs and reasonable attorney fees, for a total award of $918,129.18. Hogan successfully moved the trial court to stay enforcement of the judgment and to suspend postjudgment interest pending this appeal. Hogan appeals the trial court's denial of summary judgment, as well as the trial court's calculation of Borders' award. Borders cross appeals the trial court's order suspending postjudgment interest pending appeal.

## ANALYSIS

### I. SUMMARY JUDGMENT DENIAL

¶15 Hogan appeals the trial court's denial of his motions for summary judgment, arguing that by signing the lease, Borders waived its right to share in a condemnation award, except in narrow circumstances listed in article 22, which do not apply here. Thus, Hogan argues that the lease barred Borders from participating in apportionment as a matter of law. We disagree.

¶16 We review a grant or a denial of summary judgment de novo. *Kaplan v. Nw. Mut. Life Ins. Co.*, 115 Wn. App. 791, 799, 65 P.3d 16 (2003). In conducting this review, we consider only the evidence before the trial court when it

granted or denied the motion for summary judgment. *Kaplan*, 115 Wn. App. at 799; RAP 9.12. A trial court's interpretation of a lease is also a question of law that we review de novo. *Duvall Highlands, LLC v. Elwell*, 104 Wn. App. 763, 771 n.18, 19 P.3d 1051 (2001).

■■ ¶17 Unless a landlord and tenant agree otherwise, a tenant has the right to share in a condemnation award to the landlord. *State v. Spencer*, 90 Wn.2d 415, 420, 583 P.2d 1201 (1978); *State v. Trask*, 91 Wn. App. 253, 277, 957 P.2d 781 (1998). In interpreting all contracts, including leases, we look to the parties' objectively expressed mutual intent. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 671, 801 P.2d 222 (1990); *see also State v. Farmers Union Grain Co.*, 80 Wn. App. 287, 293-94, 908 P.2d 386 (1996) (holding that a tenant was entitled only to any amount the condemning authority specifically allocated to the tenant because the tenant entered a lease that explicitly waived the right to judicial apportionment of condemnation awards).

■ ¶18 Here, Hogan argues that Borders waived its right to share in a condemnation award in all circumstances, with only two narrow exceptions. Hogan specifically argues that Borders waived its right to share in this condemnation award unless (1) Borders terminated the lease under article 22 or (2) Puyallup specifically awarded compensation for any of Borders' unamortized expenditures for improvements, alterations, or changes to buildings Borders owned or built.

¶19 Borders correctly argues that these conditions apply only *if* Borders terminates its lease under article 22. Despite article 22's length, it is neither clear nor comprehensive. Article 22 does not clearly waive Borders' right to share in the condemnation award under the facts here.

¶20 Hogan relies heavily on *Farmers Union* to support his argument that by signing the lease, Borders waived its right to share in the condemnation award. But the language in the lease at issue in *Farmers Union* clearly manifested an objective intent to unequivocally waive the tenant's right

to share in a condemnation award. *See* 80 Wn. App. at 293-94. Thus, Hogan's reliance on *Farmers Union* is misplaced. At most, Borders waived its right to share in a condemnation award if (1) Borders terminated the lease under article 22(a) or (2) Borders had unamortized tenant improvement expenses at the time of condemnation for which the expropriating authority made a specific condemnation award, and if the expropriating authority made that specific condemnation award for Borders' unamortized expenditures for buildings Borders owned.

¶21 Thus, because those narrow contingencies did not occur, Borders did not waive its right to share in this condemnation award. The language of article 22(d) plainly states that it applies only "[*if* Borders] terminate[s this lease . . . under] Article 22." CP at 130 (emphasis added). Because Borders did not terminate its lease under article 22, Hogan's argument that Borders waived its right to apportionment fails.

¶22 Therefore, the trial court correctly found that Borders did not waive its right to apportionment. Accordingly, we affirm the trial court's denial of Hogan's motions for summary judgment.

## II. Apportionment

¶23 Hogan next argues that the trial court erred in (1) basing its apportionment of Hogan's just compensation award on facts that are not supported by substantial evidence and (2) concluding Washington law did not require Borders to mitigate its damages. We disagree.

¶24 Following a bench trial, we review findings of fact to determine if substantial evidence supports them. *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 555, 132 P.3d 789 (2006). Substantial evidence supports findings of fact if the evidence is sufficient to persuade a fair-minded person of its truth. *Hegwine*, 132 Wn. App. at 555-56. If substantial evidence supports the findings of fact, then we

query whether the factual findings support the conclusions of law. *Hegwine*, 132 Wn. App. at 555. We review conclusions of law de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). We also view the evidence in the light most favorable to the prevailing party while deferring to the finder of fact on conflicting testimony. *Weyerhaeuser v. Tacoma-Pierce County Health Dep't*, 123 Wn. App. 59, 65, 96 P.3d 460 (2004). We will not disturb a trial court's ruling if substantial, though conflicting, evidence supports its findings of facts and conclusions of law. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

A. *Valuation*

¶25 The parties concede that the trial court correctly applied the *Spencer* formula in apportioning the just compensation award between Hogan and Borders. 90 Wn.2d at 420.[5] We accept that concession. But Hogan argues that the trial court erred in finding that Borders presented credible evidence that the condemnation decreased the value of its leasehold by seven dollars per square foot. We hold that substantial evidence supports the trial court's finding.

¶26 Although they agree on the apportionment formula, Hogan and Borders presented conflicting expert testimony on the impact the taking had on the fair market value of

---

[5] In general, where the total condemnation award coincides with the value of the taking, a tenant is entitled to apportionment for the value of its leasehold and the landlord properly takes the rest of the award. *Spencer*, 90 Wn.2d at 421-22. However, if the total just compensation award is either too large or too small, the general formula does not fairly distribute the just compensation award between landlord and tenant. 90 Wn.2d at 422. Instead, where the total just compensation award is too large or too small, the *Spencer* formula applies to equitably apportion that award. 90 Wn.2d at 422. Under the *Spencer* formula, if the taking does not terminate a leasehold, the trial court should (1) determine the total value of the separate property interests condemned, (2) calculate the ratio each of those separately valued property interests bears to the total value of the condemned property, and (3) apply those ratios to the total just compensation actually awarded for the taking to determine the proportional share of the award for each property interest. 90 Wn.2d at 420-21. Because Hogan presented evidence that just compensation for Puyallup's taking was $11,900,000 but the jury awarded only $5,150,000 total just compensation, the *Spencer* formula applies.

Borders' leasehold. Hogan presented Gibbons's expert testimony that Puyallup's taking diminished Borders' leasehold by $1.50 per square foot, assuming that Hogan bore the $2,200,000 cost to retenant Borders' space. Gibbons further opined that Borders would break its lease and, thus, calculated the net present value of Borders' damages only through the taking date.

¶27 Conversely, Borders presented Lent's expert testimony valuing the diminution of Borders' leasehold at seven dollars per square foot, assuming that Borders would bear the $2,200,000 retenanting cost and that Borders would sublease its space and exercise all five of its options to renew for its subtenant. Lent is an expert in commercial real estate such that Gibbons consulted her in his work for Hogan. Lent based her valuation on her expertise in commercial leaseholds, knowledge of the particular marketplace and distressed properties, consultations with local real estate brokers, and Gibbons's analysis. Hogan and Borders disagree only about whether Borders would exercise its options to renew and which party would bear the $2,200,000 retenanting cost.

¶28 After considering the expert testimony, the trial court adopted Hogan's proposed methodology and discount rate but adopted Borders' evidence that it would bear the $2,200,000 retenanting costs. Substantial evidence supports the findings of fact. Even though Hogan presented conflicting expert testimony, we defer to the fact finder and will not disturb a trial court's ruling if it is supported by substantial evidence. Thus, Hogan's argument fails.

B. *Duty To Mitigate*

¶29 Hogan next argues that under Washington law, Borders had a duty to mitigate its damages by not exercising any of its five options to renew its lease. Thus, Hogan argues that the trial court erred in concluding that Borders' damages extended through the last of its five renewal options. We disagree.

¶30 We review a trial court's conclusions of law de novo. *Dickie*, 149 Wn.2d at 880. Whether the duty to mitigate applies to condemnation cases is an issue of first impression in Washington. Division Three of this court has, however, recognized that other jurisdictions require condemnees to mitigate their damages. *State v. Wandermere Co.*, 89 Wn. App. 369, 384, 949 P.2d 392 (1997). The *Wandermere* court recognized a New Jersey case establishing that condemnees have a duty to mitigate their damages and that New Jersey courts will consider this duty in determining the total amount of just compensation the *State* must pay for the taking. 89 Wn. App. at 384; *State v. Weiswasser*, 149 N.J. 320, 693 A.2d 864, 869-72 (1997). The New Jersey court held that a court *may* consider evidence of availability of comparable replacement property, if reasonable under all the circumstances, and if the replacement property could reasonably affect the condemnee's fair market damages. *Weiswasser*, 693 A.2d at 872. The New Jersey court's key consideration was whether the condemnee's actions to mitigate damages, if any, were fair and reasonable. *Weiswasser*, 693 A.2d at 871.

¶31 Other states have also applied the duty to mitigate damages in condemnation cases. For example, California requires condemnees to mitigate the damage caused by the taking and compensates the condemnee for the amount the condemnee " 'reasonably and in good faith spen[t] in discharging [the] duty' to mitigate damages." *Placer County Water Agency v. Hofman*, 165 Cal. App. 3d 890, 897, 211 Cal. Rptr. 894 (1985) (second alteration in original) (quoting *Albers v. County of Los Angeles*, 62 Cal. 2d 250, 272, 398 P.2d 129, 42 Cal. Rptr. 89 (1965)). In California, then, a landowner has a duty to mitigate damages caused by the government's taking and the government must compensate the landowner for its reasonable mitigation costs. *Hofman*, 165 Cal. App. 3d at 897.

¶32 Here, Hogan argues that Borders has a duty to mitigate its damages; but Hogan mischaracterizes Wash-

ington law in stating that the duty to mitigate applies to condemnation cases. Moreover, Hogan cites no authority for his contention that the duty to mitigate applies to the apportionment phase of a condemnation proceeding in Washington or elsewhere. Rather, Hogan references a single New Jersey case, *Weiswasser*, that considered a duty to mitigate damages as a factor in determining the lump-sum condemnation damages that the *State*, or condemning authority, must pay. Indeed, the states that apply the duty to mitigate in condemnation cases do not appear to extend that duty to apportionment of the award. *See Weiswasser*, 693 A.2d at 868-73; *Hofman*, 165 Cal. App. 3d at 896-98.[6]

¶33 Moreover, adopting Hogan's argument that Borders' duty to mitigate requires us to reverse Borders' award is not appropriate because, as in *Wandermere*, Hogan argued his duty of mitigation theory to the trial court. Specifically, Hogan presented expert testimony that Borders would increase its damages by exercising its options to renew its lease. Hogan's experts also testified that a "reasonable tenant" would "go dark," break its lease, and relocate under these circumstances.[7] RP (Apr. 13, 2010) at 103-07, 117. Indeed, all of Hogan's evidence on Borders' failure to mitigate its damages assumed Borders' duty to mitigate required it to break its lease on the condemnation date, immediately relocate its profitable Puyallup location, and leave the $2,200,000 retenanting costs to Hogan. But Hogan provided no evidence to the trial court on what Borders' damages would be if it broke its lease and relocated. Instead, Hogan argued that Borders could lessen or even eliminate its damages by breaking its lease eight years before the end of its initial term and moving its store to another location. Thus, the trial court considered Hogan's

---

[6] We note that in the condemnation phase of the trial, Puyallup did not argue that Hogan's just compensation should be reduced because Hogan failed to mitigate his damages.

[7] However, Hogan did not present evidence that Borders would eliminate or even reduce its damages by breaking its lease, "going dark," and relocating on the condemnation date.

evidence on actions Borders could take to mitigate its damages.

¶34 The trial court also considered Borders' expert testimony that it did investigate and conduct preliminary negotiations for replacement property. Borders provided evidence that it would likely sublease its space at the Center and that it highly valued its renewal options because such options are essential to quality subtenants. The trial court decided to calculate Borders' damages through all its renewal options.[8] Thus, we reject Hogan's argument that Borders had a duty to mitigate its damages by breaking the lease and by not exercising any of its renewal options. Instead, we hold that the trial court correctly determined that Borders did not have a duty to terminate its lease on the condemnation date.

III. EQUITABLY INCREASED AWARD

¶35 Next, Hogan argues that the trial court erred in equitably doubling Borders' apportionment award because the equitable factors support decreasing, rather than increasing, Borders' award. We disagree.

¶36 Washington courts apply equitable principles in awarding just compensation for condemnation. *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 660, 935 P.2d 555 (1997). Washington courts also have equitable discretion to apportion just compensation condemnation awards. *Spencer*, 90 Wn.2d at 419. We review a trial court's equitable relief for an abuse of discretion. *Sorenson v. Pyeatt*, 158 Wn.2d, 523, 531, 146 P. 3d 1172 (2006). We do not reverse a discretionary decision absent a clear showing that the trial court's exer-

---

[8] The trial court mentioned the duty to mitigate damages only once in its findings of fact and conclusions of law. Specifically, in enumerating the equitable factors that weighed in favor of increasing Borders' apportioned award, the trial court stated that "Borders *could* mitigate its damages" and not renew its lease after 2015. CP at 829 (emphasis added). The trial court did not explicitly find that Borders either had or did not have a duty to mitigate its damages, though it is clear that the trial court considered the argument.

cise of its discretion was manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A trial court's exercise of discretion is manifestly unreasonable if no reasonable person would concur with the court's view. *Mayer*, 156 Wn.2d at 684. A trial court exercises its discretion on untenable grounds or for untenable reasons if it relies on unsupported facts or applies an incorrect legal standard. *Mayer*, 156 Wn.2d at 684.

¶37 Here, as we discussed above, substantial evidence supports the trial court's findings that the taking diminished the value of Borders' leasehold by seven dollars per square foot. Further, Hogan concedes that the trial court correctly applied the *Spencer* formula in valuing Borders' damages.

¶38 The trial court concluded that the facts in this case "crie[d] out for equitable adjustment because of the unique variables." RP (Apr. 20, 2010) at 402. The trial court then considered several factors that weighed both for and against Borders.

¶39 In explaining its rationale for equitably doubling Borders' award, the trial court first observed that Borders' space was roughly 23 percent of the Center's total area and that its equitably increased award approximated "the average of 23 [percent] (Borders' square foot percentage of the [p]roperty) of $2,300,000 (the amount Hogan believe[d] should be apportioned) and 23 [percent] of $5,150,000 (the amount Borders [thought] should be apportioned)." CP at 830. The trial court next observed that its equitably adjusted award was also proportionate to the amount of damages Hogan claimed the jury actually awarded specifically to Hogan in the trial's first phase. Thus, based on the trial court's thoughtful analysis, the trial court's exercise of its equitable discretion to double Borders' apportionment was not manifestly unreasonable. Accordingly, we hold that the trial court did not abuse its discretion in increasing Borders' apportionment.

## IV. PREJUDGMENT INTEREST

¶40 Hogan next argues that the trial court erred in awarding Borders prejudgment interest from June 15, 2009 (date of total just compensation award) to July 8, 2010 (date of apportionment judgment) because Borders' apportionment was not a liquidated amount before the court's April 20, 2010 oral ruling.[9] We disagree.

■ ¶41 We review a trial court's award of prejudgment interest for an abuse of discretion. *Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co.*, 143 Wn. App. 753, 790, 189 P.3d 777 (2008). Prejudgment interest compensates a successful claimant for the lost use of its funds. *Polygon Nw.*, 143 Wn. App. at 793. Generally, prejudgment interest is available only once a claim is liquidated or once an unliquidated claim can be computed according to a fixed standard. *Polygon Nw.*, 143 Wn. App. at 790-91. But a trial court's need to equitably apportion an award between claimants does not automatically render that award unliquidated. *Polygon Nw.*, 143 Wn. App. at 792.

¶42 Borders correctly observes that when property is taken before the condemnee receives just compensation, prejudgment interest necessarily compensates the property owner for the loss of the land's use between the taking and payment. *Sintra*, 131 Wn.2d at 656. Further, Washington courts assume that a person has a beneficial use for just compensation awards paid at the same time as the taking. *Sintra*, 131 Wn.2d at 656. Thus, in these situations "[i]nterest . . . is not an award of prejudgment interest on a liquidated sum . . . but is a measure of the rate of return on the property owner's money had there been no delay in payment." *Sintra*, 131 Wn.2d at 656.

---

[9] Hogan concedes that if we hold their lease did not bar Borders from apportionment, then Borders is entitled to prejudgment interest of $88,304.13 as its pro rata share of the prejudgment interest Puyallup paid after the first phase of the trial. Hogan challenges only Borders' right to prejudgment interest for the period between the lump-sum just compensation award and its apportionment.

¶43 Here, Puyallup's lump-sum just compensation for the taking was a liquidated amount. Thus, in accordance with *Polygon Northwest*, Borders' claim for apportionment did not render that sum unliquidated. 143 Wn. App. at 792. After Puyallup paid Hogan just compensation for the taking, all that remained was for the trial court to equitably apportion that award between Hogan and Borders according to the fair market value diminution of Borders' leasehold. The trial court calculated that diminution of fair market value with reference to fixed standards based on both Hogan's and Borders' expert testimony.

¶44 Further, Puyallup condemned the property effective June 11, 2007. Thus, both Hogan's and Borders' damages were fixed as of June 11, 2007. Moreover, Puyallup paid Hogan in September 2009 but Hogan still has not paid Borders. Thus, under *Sintra*, Hogan must compensate Borders for its lost use of its apportionment award between the June 2007 condemnation date and the date Borders actually receives its condemnation award. The trial court did not abuse its discretion in calculating the amount of Borders' prejudgment interest. Thus, Hogan's argument fails.

V. Postjudgment Interest

¶45 In its cross appeal, Borders argues that the trial court erred in entering an order suspending accrual of postjudgment interest pending Hogan's appeal. We agree.

¶46 We review the application of statutes to specific facts de novo. *Sintra, Inc. v. City of Seattle*, 96 Wn. App. 757, 761, 980 P.2d 796 (1999) (*Sintra II*). Judgment principal accrues postjudgment interest until it is paid in full. *State v. Trask*, 98 Wn. App. 690, 696, 990 P.2d 976 (2000) (*Trask II*). Postjudgment interest applies in condemnation cases and "with special force when the State takes private property for public use, but does not fully pay for it at that time," because the State deprives the condemnee of both the property and its value. *Trask* II, 98 Wn. App. at

697. But RCW 8.28.040 provides further rules for applying interest in condemnation cases. It states:

> Whenever in *any eminent domain proceeding*, heretofore or hereafter instituted for the taking or damaging of private property, a verdict shall have been returned by the jury, or by the court if the case be tried without a jury, fixing the amount to be paid as compensation for the property so to be taken or damaged, such verdict shall bear interest at the maximum rate of interest permitted at that time under RCW 19.52.020 from the date of its entry to the date of payment thereof: PRO-VIDED, That the running of such interest shall be suspended, and such interest shall not accrue, for any period of time during which the entry of final judgment in such proceeding shall have been delayed solely by the pendency of an appeal taken in such proceeding.

(Emphasis added.) Eminent domain proceedings have "three phases: (1) adjudication of public use and necessity, (2) determination of just compensation, and (3) payment" of that just compensation, with the condemning authority taking possession. *Olympic Pipe Line Co. v. Thoeny*, 124 Wn. App. 381, 387, 101 P.3d 430 (2004).

¶47 The statute applies to "any eminent domain proceeding," but apportionment of a just compensation award is not part of an eminent domain proceeding. *Olympic Pipe Line*, 124 Wn. App. at 387. Thus, RCW 8.28.040 does not apply.

■■■ ¶48 Further, Borders correctly observes that there is no Washington authority applying RCW 8.28.040 to suspend interest accruing pending apportionment of a final condemnation award. Instead, each Washington case applying the statute grapples with whether interest accrues during an appeal of a final judgment establishing the amount the *condemning authority must pay the landowner* as just compensation for the taking. *See State v. Lacey*, 84 Wn.2d 33, 524 P.2d 1351 (1974); *In re City of Anacortes*, 81 Wn.2d 166, 500 P.2d 546 (1972). By statute, a trial court's final judgment fixing the amount of just compensation a municipality must pay a landowner to condemn its property

is final and conclusive, unless the municipality or the landowner seek appellate review. RCW 8.12.200. Thus, the trial court's judgment on the amount of just compensation for a municipal taking is final when it is entered, unless either the city or the landowner appeal it. Judgments then accrue postjudgment interest until fully satisfied. *Trask* II, 98 Wn. App. at 696.

¶49 Here, the trial court entered a final and unappealed judgment fixing the just compensation Puyallup owed Hogan for the taking at $5,788,959 on June 15, 2009. Puyallup satisfied Hogan's just compensation judgment in full on October 29, 2009. Because neither Hogan nor Puyallup appealed the trial court's final judgment fixing the amount of compensation Puyallup owed for the taking, that judgment is final and not subject to the interest tolling provision in RCW 8.28.040. Accordingly, Borders is entitled to interest on its apportionment award until Hogan pays it in full.

¶50 Moreover, Washington courts concur that RCW 8.28.040 applies only to limited situations where the property interest holder retains the property's beneficial use during the appeal. *Sintra* II, 96 Wn. App. at 761-62; *Lacey*, 84 Wn.2d at 37-38. A property holder loses its beneficial use of the property—and becomes entitled to interest on the just compensation and damage award—when the condemning authority either takes possession of it or has the right to take possession of it. *Anacortes*, 81 Wn.2d at 168-69; *Lacey*, 84 Wn.2d at 37-38.

¶51 Here, Hogan and Puyallup stipulated that Puyallup took immediate possession of the condemned land on June 11, 2007. Despite the fact that Puyallup had neither started nor scheduled the road extension project construction at the time of apportionment, it had the right to do so. Because both Hogan and Borders suffered damages on the June 11, 2007 taking date and because Puyallup paid Hogan in full in 2009, Borders' apportioned share accrued postjudgment interest.

## VI. Conclusion

¶52 We affirm the trial court's denial of Hogan's requests for summary judgment. We hold that (1) Borders did not waive its statutory right to apportionment of Hogan's condemnation award in their lease; (2) substantial evidence supports the trial court's factual finding that the condemnation diminished the value of Borders' leasehold by seven dollars per square foot; (3) Washington law does not impose the duty to mitigate on tenants in condemnation proceedings and Hogan argued, and the trial court considered, Borders' duty to mitigate; (4) the trial court did not abuse its discretion in equitably doubling Borders' apportionment share; and (5) the trial court did not abuse its discretion in awarding Borders prejudgment interest. We affirm the trial court on each of these issues. In addition, we hold that the trial court erred in suspending accrual of Borders' postjudgment interest pending Hogan's appeal. We reverse the trial court only as to its order suspending accrual of postjudgment interest.

## ATTORNEY FEES

¶53 Lastly, Hogan argues that the trial court erred in granting attorney fees to Borders and that we should award his attorney fees for bringing his motions for summary judgment, incurred defending Borders' claims in the apportionment trial, and in bringing this appeal. Borders urges us to affirm the trial court's attorney fee award and additionally to award its attorney fees on appeal. We agree with Borders.

¶54 A lease is a contract. *See Berg*, 115 Wn.2d at 662-63. Parties to a contract may specify that the prevailing party in a contractual dispute is entitled to attorney fees. RCW 4.84.330. We uphold a trial court's award of contractual attorney fees unless the trial court clearly abused its discretion in awarding them. *Boeing Co. v. Sierracin Corp.*,

108 Wn.2d 38, 64-65, 738 P.2d 665 (1987). Contractual provisions awarding attorney fees to the prevailing party also support an award of appellate attorney fees. *Thompson v. Lennox*, 151 Wn. App. 479, 484, 212 P.3d 597 (2009); RAP 18.1.

¶55 Here, Hogan and Borders entered a lease specifying that the prevailing party in "any action, proceeding, trial or appeal" is entitled to its costs and reasonable attorney fees. CP at 149-50. Hogan made no showing that the trial court abused its discretion in awarding Borders attorney fees below. Thus, because Borders prevailed below, we affirm the trial court's award of attorney fees below. Borders also prevailed on appeal. Accordingly, we award Borders its attorney fees on appeal in an amount the commissioner of this court will determine upon Borders' compliance with RAP 18.1.

¶56 Affirmed in part and reversed in part.

QUINN-BRINTNALL and VAN DEREN, JJ., concur.